## La MOTTE ET AL. *v.* UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 121. Submitted December 10, 1920.—Decided January 24, 1921.

1. As an incident of its guardianship over the Osage Indians, the United States may sue to enjoin the assertion of rights under leases of restricted allotments obtained from members of the tribe without conforming to applicable provisions of the statutes and valid administrative regulations, and to enjoin the negotiation of other such unlawful leases in the future. P. 575.

2. Under the Act of June 28, 1906, concerning the Osage Indians, § 7 of which gives members the right to lease their restricted *allotments* and provides that such leases "shall be subject only to the approval of the Secretary of the Interior," the Secretary is authorized not merely to approve or disapprove leases after execution, but to make necessary reasonable regulations prescribing in advance as conditions to approval of leases the mode in which they shall be executed and presented to him and the terms and conditions they shall contain for the protection of the Indian lessors. *Id.*

3. The authority of the Secretary to make such regulations is covered by § 12 of the act, declaring that all things necessary to carry the act into effect and not otherwise specifically provided for shall be done under his direction and authority; and without that section it would be implied. P. 576.

4. Section 7 of the act, in providing that such leases shall be subject "only" to the approval of the Secretary, distinguishes between leases by individuals, to be approved by the Secretary alone, and leases for the tribe, which, under § 3, need the sanction of the tribal council as well. *Id.*

5. Under § 7 of the act, construed with §§ 3 and 6 of the Act of April 18, 1912, the approval of the Secretary is requisite to the validity of leases of restricted lands of minor allottees or minor heirs, given by their guardians with the sanction of the local state courts in which the guardianships were pending. P. 577.

6. Under § 7, *supra*, leases of restricted land made by an Indian parent having a certificate of competency, or by a white parent not a

member of the tribe, on behalf of minor allottees or heirs, require the Secretary's approval. P. 578.

7. Land allotted in the right of a deceased member cannot be leased by his heirs without the Secretary's approval if they are members of the tribe and without certificates of competency. *Id.*

8. A devise of a direct or inherited restricted allotment by a will made pursuant to § 8 of the Act of 1912, *supra,* and approved by the Secretary of the Interior, operates as a conveyance of the land free of restrictions. So *held,* in view of the broad language of the section and its interpretation by Congress. *Id.*

9. Neither under the common law nor under the statutes of Oklahoma may a testator impose an indefinite restriction on the right of his devisee to alienate the land devised. P. 580.

10. Members of the Osage Tribe, though without certificates of competency, may lease, without the Secretary's approval, allotments which they have purchased after such allotments had become unrestricted, since there is nothing in the Acts of 1906 and 1912, *supra,* to reimpose restrictions once removed, or to subject to restrictions all lands, however acquired, which members without such certificates may own. *Id.*

11. Purchasers or lessees of unrestricted, undivided interests in Osage allotments should be enjoined from exerting control over the lands, to the exclusion of Indian co-tenants of restricted interests; but in this case the injunction was so broad as to prevent them from dealing with their own interests, and should be modified. *Id.*

256 Fed. Rep. 5, modified and affirmed.

THE case is stated in the opinion.

*Mr. T. J. Leahy* and *Mr. C. S. Macdonald* for appellants.

*Mr. Assistant Attorney General Nebeker* and *Mr. H. L. Underwood,* Special Assistant to the Attorney General, for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit by the United States to enjoin the defendants (appellants here) from asserting or exercising any

right under certain leases obtained from individual Osage
Indians without the approval of the Secretary of the In-
terior, and from negotiating or obtaining other leases of
the same class without conforming to statutory provisions
and administrative regulations alleged to be applicable.
The District Court granted the major part of the relief
sought and denied the rest. On cross appeals the Circuit
Court of Appeals enlarged the relief granted, but refused
a part of what was denied by the District Court. 256 Fed.
Rep. 5. The United States then acquiesced and the de-
fendants took a further appeal to this court.

Prior to the Act of June 28, 1906, c. 3572, 34 Stat. 539,
the lands to which the suit relates were tribal lands of the
Osage Indians, and after that act were divided under its
provisions among the members of the tribe, as were also
the tribal funds. Each member received 160 acres des-
ignated as a homestead and approximately 500 acres desig-
nated as surplus lands. The tribal funds were divided by
placing a *pro rata* share to the credit of each member or his
heirs in the United States Treasury. Except as otherwise
provided, the homestead is to be "inalienable and nontax-
able for a period of twenty-five years, or during the life
of the homestead allottee," the surplus lands are to be
"inalienable for twenty-five years" and nontaxable for
three years, and the funds as distributed are to be held in
trust by the United States for twenty-five years. These
periods do not all have a common point of beginning, but
nothing turns on that here. The act contains express pro-
vision (§ 2, Seventh) that the Secretary of the Interior, in
his discretion, upon the petition of any adult member, may
issue to such member "a certificate of competency" author-
izing him to sell and convey any of his surplus lands, if,
upon investigation, he is found fully competent and capa-
ble of transacting his own business and caring for his own
affairs, and that upon the issue of such certificate the sur-
plus lands shall become subject to taxation and the mem-

ber shall have "the right to manage, control, and dispose of his or her lands [other than the homestead] the same as any citizen of the United States." The interest on the funds held in trust and also certain revenues and moneys from other sources (§ 4, First and Second) are to be paid quarterly to the members; except that in the case of minors payments are to be made to the parents, so long as the moneys are not misused or squandered, and where the parents are dead payments are to be made to legal guardians. Upon the death of a member his lands, moneys, and interests "descend" to his "legal heirs, according to the laws" of Oklahoma; with an exception not material here (§ 6). The leasing of allotted lands is specially dealt with as follows:

"Sec. 7. That the lands herein provided for are set aside for the sole use and benefit of the individual members of the tribe entitled thereto, or to their heirs, as herein provided; and said members, or their heirs, shall have the right to use and to lease said lands for farming, grazing, or any other purpose not otherwise specifically provided for herein, and said members shall have full control of the same, including the proceeds thereof: *Provided*, That parents of minor members of the tribe shall have the control and use of said minors' lands, together with the proceeds of the same, until said minors arrive at their majority: *And provided further*, That all leases given on said lands for the benefit of the individual members of the tribe entitled thereto, or for their heirs, shall be subject only to the approval of the Secretary of the Interior."

Besides several provisions indicating that the act is to be executed under the supervision of the Secretary of the Interior, there is a concluding section declaring:

"Sec. 12. That all things necessary to carry into effect the provisions of this Act not otherwise herein specifically provided for shall be done under the authority and direction of the Secretary of the Interior."

An amendatory Act of April 18, 1912, c. 83, 37 Stat. 86, by its third section, subjects the property of deceased, orphan minor, insane and some other allottees to the jurisdiction of the county courts of Oklahoma in probate matters, but with the qualification, first, "that no guardian shall be appointed for a minor whose parents are living, unless the estate of said minor is being wasted or misused by such parents," and, secondly, "that no land shall be sold or alienated under the provisions of this section without the approval of the Secretary of the Interior." This amendatory act also contains a section dealing with disposals by will of which we shall speak presently.

In virtue of §§ 7 and 12 of the Act of 1906 the Secretary of the Interior adopted and promulgated regulations designating the mode in which leases of restricted lands for farming or grazing purposes should be executed and brought to his attention, indicating the terms and conditions which should be embodied in the leases for the protection of the Indian lessors, and informing intending lessors and lessees that where the regulations were not complied with the leases would not be approved.

The defendants (appellants here) are engaged in procuring leases of Osage lands for farming and grazing purposes, especially the latter. At times the leases are procured for their own benefit and at other times in the interest of cattlemen who desire and need large pastures. Where cattlemen are to be the beneficiaries, the defendants often take the leases in their own names and agree to protect the cattlemen against claims for trespass or damage. Some of the leases are for homesteads, others for surplus lands. Some are procured from adult allottees, or adult heirs of allottees, having certificates of competency, and some from like allottees or heirs where no such certificate has been issued. Others are obtained from parents or legal guardians of minor allottees or minor heirs, and still others from devisees holding under wills approved by the

Secretary of the Interior. Many of the leases are for restricted lands and yet are taken without conforming to the regulations and without obtaining the Secretary's approval. But notwithstanding this, the defendants proceed to use the lands for grazing purposes, or to enable others to do so, as if the leases were properly obtained. The failure to conform to the statute and the regulations is not accidental, but intentional and persistent.

The right of the United States to maintain the suit, although challenged by the defendants, is not debatable. The Osages have not been fully emancipated, but are still wards of the United States. The restrictions on the disposal and leasing of their allotments constitute an important part of the plan whereby they are being conducted from. a state of tribal dependence to one of individual independence and responsibility; and outsiders, such as the defendants, are bound to respect the restrictions quite as much as are the allottees and their heirs. Authority to enforce them, like the power to impose them, is an incident of the guardianship of the United States. That relation and the obligations arising therefrom enable the United States to maintain the suit, notwithstanding it is without pecuniary interest in the relief sought. *Heckman* v. *United States*, 224 U. S. 413, 437–442; *United States* v. *New Orleans Pacific Ry. Co.*, 248 U. S. 507, 518; *United States* v. *Osage County*, 251 U. S. 128, 133. And see *Causey* v. *United States*, 240 U. S. 399, 402.

It is insistently urged that the regulations adopted and promulgated by the Secretary of the Interior are void and of no effect, and therefore that no right to relief can be predicated upon the defendants' disregard of them. The argument advanced is that the leasing provision says nothing about regulations; that the clause "subject *only* to the approval of the Secretary of the Interior" makes strongly against. any regulations; that what is intended is to leave the Indian free to lease in his own way and on his

own terms, subject to the Secretary's approval or disapproval of the lease after it is given; and that the regulations, as adopted and promulgated, unwarrantably interfere with this freedom of action. In our opinion the insistence is not tenable, and for the following reasons:

The fact that the leasing provision says nothing about regulations is not important, for § 12 plainly enables the Secretary to employ any necessary means to carry that provision into effect. And, even without § 12, power to make regulations suitable to that end and consistent with the act would be implied. *United States* v. *Bailey,* 9 Pet. 238, 254–255.

The need for some regulations is obvious. The Osages among whom the lands were divided number about 2,000 and each member received an aggregate of approximately 660 acres, often in scattered tracts. All the lands were restricted in the beginning and most of them probably will remain so for several years. The leases are subjected to the Secretary's approval or disapproval to the end that the allottees and their heirs may be protected from their own improvidence and from overreaching by others. Both the lands and the Indians are remote from the seat of Government, and without some general and authoritative rules for the guidance of intending lessors and lessees it is certain that improvident and ill-advised leases would be given and multiplied in a way which would confuse and embarrass the Indians and greatly enhance the difficulties attending the Secretary's supervision.

We find nothing in the leasing provision indicating that no regulations are intended. True, the concluding proviso declares that "all leases given on said lands for the benefit of the individual members of the tribe entitled thereto, or for their heirs, shall be subject *only* to the approval of the Secretary of the Interior." But this means, as the context and other parts of the act show, that leases given on restricted lands for the benefit of individual allottees, or

their heirs, and not for the benefit of the tribe, shall be subject to the approval of the Secretary of the Interior, but need not have the sanction of the tribal council. The word "only," on which the defendants place much emphasis, merely aids in marking an intended distinction between leases given for the benefit of individuals and those given for the benefit of the tribe, the latter, as § 3 shows, needing the sanction of the tribal council as well as the approval of the Secretary of the Interior.

Without doubt the regulations prescribed operate to restrain the Indian from leasing in his own way and on his own terms, but this is not a valid objection. If there were no regulations, the disapproval of a lease satisfactory to him would work a like restraint. Manifestly some restraint is intended, for the leasing provision does not permit the Indian to lease as he pleases, but only with the Secretary's approval.

The regulations appear to be consistent with the statute, appropriate to its execution, and in themselves reasonable.

It follows from what has been said that in the main the action of both courts below was correct; that is to say, the defendants were properly enjoined from asserting or exercising any right under leases of restricted lands given by individual Osages without the approval of the Secretary of the Interior, and from negotiating or procuring other leases of the same class without conforming to the regulations prescribed.

Several questions relating to particular leases or lands remain to be noticed.

The defendants have leases of restricted lands, belonging to minor allottees or minor heirs, which were given by guardians with the sanction of the local courts in which the guardianships were pending, but were not approved by the Secretary of the Interior. The District Court ruled that the Secretary's approval was not required and the Circuit Court of Appeals held to the contrary. We take the latter

view.  It is supported by the comprehensive words of the concluding proviso of the leasing provision and is strengthened by the second qualification found in § 3 of the amendatory Act of 1912, under which the local courts obtain probate jurisdiction over the property of such minors, and by the proviso in § 6 of that act relating to the partition of inherited lands.

Some of the defendants' leases of restricted lands were given by parents on behalf of minor allottees or minor heirs, —one of the parents having a certificate of competency and the other being of white blood and not a member of the tribe.  Both courts ruled that the Secretary's approval was essential, and rightly so, as we think.  In giving such leases the parents act for the child, not for themselves, and approval by the Secretary is required by reason of the child's status, as would be true if the lease were given by a guardian.

One of the leases held by the defendants is for lands which, in the course of the division, were selected and allotted in the right of a member then deceased.  Under the statute the lands passed to the member's heirs and the lease was procured from them.  They are members and without certificates of competency.  The lease has not been approved by the Secretary.  Both courts regarded the lands as restricted and the lease as requiring the Secretary's approval.  That view has since been sustained by us in *Kenny* v. *Miles*, 250 U. S. 58.

Two leases, not approved by the Secretary, are for lands which passed to devisees under wills approved by that officer and duly admitted to probate.  Both testators were adult members of the tribe, not mentally incompetent. One was an allottee and the other the sole heir of a deceased allottee.  In their hands the lands were restricted.  The defendants insist that under the approved wills the lands passed to the devisees freed from the restrictions.  If so, the leases did not require the Secretary's approval.  Both

courts held that the lands continued to be restricted. The question is not free from difficulty, but we think it must be ruled the other way. Strictly speaking a devisee takes under the will as an instrument of conveyance, and not by descent as an heir. This form of alienation was within the restriction imposed by the Act of 1906, *Taylor* v. *Parker*, 235 U. S. 42, but the amendatory Act of 1912 relaxed the restriction by declaring:

"Sec. 8. That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will, in accordance with the laws of the State of Oklahoma: *Provided*, That no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

This provision is broadly written, is in terms applicable to restricted lands and funds, and enables the Indian to dispose of all or any part of his estate by will, in accordance with the state law, if his will be approved by the Secretary. True, it does not say that a disposal by an approved will shall put an end to existing restrictions, but that is an admissible, if not the necessary, conclusion from its words. After its enactment the Secretary of the Interior construed it as having that meaning, and it was administered accordingly in that department up to the time of this suit. And that Congress intended it should have that meaning is at least inferable from a general act of the next session respecting wills by Indian allottees and their approval by the Secretary (c. 55, 37 Stat. 678); for that act, while providing that "the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period," expressly excepted the Osages from its reach. These matters apparently were not brought to the attention of the courts below. We regard them as of suffi-

cient weight to put the question at rest. In one of the wills the testator attempted to impose an indefinite restraint on the devisee's right to alienate the land; but, whether the attempt be tested by the common law or by the local statutes, it plainly was of no effect. We modify the decree by excluding this class of leases from the injunction.

Some of the leases are for lands which were purchased by the lessors after the lands in regular course had become unrestricted. Because the lessors were members of the tribe and without certificates of competency the Circuit Court of Appeals held that the leases were subject to the Secretary's approval. The District Court had held the other way. We think the District Court was right. There is no provision in the Act of 1906 or that of 1912 which reimposes restrictions after they have been removed, or which subjects to restrictions all lands, however acquired, which a member without a certificate of competency may own. See *McCurdy* v. *United States*, 246 U. S. 263. The restrictions reach such lands only as were allotted to the member or were inherited by him from another in whose hands they were restricted. Many members who are without certificates of competency have incomes and property which they are free to deal with as they choose. Some have purchased from white men having full title and an undoubted right to sell. See *Levindale Lead Co.* v. *Coleman*, 241 U. S. 432. As to this class of leases we so modify the decree that the injunction shall not include them.

Through purchases or leases from heirs who have certificates of competency, or are white men and not members of the tribe, the defendants have come lawfully to own, or have leases of, undivided interests in particular lands the remaining interests in which continue to be restricted; and the defendants are using or exerting control over these lands to the exclusion of the Indian owners of the restricted interests. This use or control is colorably based on unapproved leases and other forms of consent given by

the other owners which are without legal sanction. Both courts rightly condemned these acts and portions of the injunction are directed against them. But as to some of the lands the injunction is open to an objection which the defendants urge against it, in that it prohibits them from "in any manner dealing with said lands, or any part thereof, without the consent of the Secretary of the Interior." This prohibition would prevent them from selling their unrestricted interests, although that may not have been intended. It should be confined to the restricted undivided interests of the Indian owners; and we modify the decree accordingly.

Subject to the modifications here made the decree is affirmed.

*Decree modified and affirmed.*