The Citizens Trust Company, defendant in error, is the record guardian under an appointment of the county court of Osage county, of Irene and Anna Pitts, full-blood Osage orphan minor Indian. The guardian, the Citizens Trust Company made application in the county court of Osage county for authority to employ a firm of attorneys at law to enforce payment of certain money alleged by the guardian to be in the hands of the Secretary of the Interior to the said guardian of said minors for their use and benefit. No service was had on the plaintiff in error, Superintendent of the Osage Agency, and no papers were filed with him or served on him in his official capacity, and there was no appearance by the Superintendent of the Osage Agency in the proceeding in the county court. The county judge of Osage county approved the contract between the Citizens Trust Company, as guardian of said minor Osage Indians, allowing $100 as retainer fee and allowing a recovery of not to exceed five per cent. on the amount of money recovered. These two minor Osage Indians, aged 11 and 13, respectively, at the time of the hearing, received no allotment and their parents are dead. From the order of the county court approving this contract, the Superintendent of the Osage Agency appealed to the district court of Osage county, where the matter was tried before the court without the intervention of a jury, and after hearing the testimony, the district court sustained the county court in finding the contract reasonable and affirming the action of the county court. From the judgment of the district court, the Superintendent of the Osage Agency has appealed to this court.
Whether in the proceeding in the county court, having for its object the approval of the contract in question, it was necessary that notice should have been given to the Superintendent of the Osage Agency before the county court would have jurisdiction in the matter is the decisive question in the case, and the only question, as we understand the contention of the parties, necessary to be determined.
The first proposition presented by the appellant is that the Superintendent of the Osage Agency is a necessary party to every proceeding in the county court respecting the property of deceased or orphan minors, insane, or other incompetent allottees of the Osage Tribe of Indians, and that, as it is admitted, no notice of the application of the Citizens Trust Company, guardian, was had upon the Superintendent of the Osage Agency, the county court was deprived of jurisdiction to make the order complained of and the district court of Osage county was without jurisdiction to approve the said order of the county court.
Section 3 of the Act of Congress, approved April 18, 1912, being an act supplementary *Page 117 
to and amendatory of the Act entitled, "An Act for the division of the lands and funds of the Osage Nation of Indians in Oklahoma," approved June 28, 1906, provides in part:
"That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe, shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma, but a copy of all papers filed in the county court shall be served on the Superintendent of the Osage Agency at the time of filing, and said Superintendent is authorized, whenever the interests of the allottee require, to appear in the county court for the protection of the interests of the allottee. The Superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of executors, administrators, and guardians, or other persons having in charge the estate of any deceased allottee, or of minors or persons incompetent under the laws of Oklahoma, and whenever he shall be of opinion that the estate is in any manner being dissipated or wasted, or is being permitted to deteriorate in value by reason of the negligence, carelessness, or incompetency of the guardian, or other person in charge of the estate, the Superintendent of the Osage Agency or the Secretary of the Interior, or his representative shall have power, and it shall be his duty, to report said matter to the county court and take the necessary steps to have such case fully investigated, and also to prosecute any remedy, either civil or criminal, as the exigencies of the case and the preservation and protection of the interests of the allottee or his estate may require."
It is the theory of the appellee, the Citizens Trust Company, that, by virtue of the above provisions of the Act of 1912, the Superintendent of the Osage Agency is a proper party only when allottees are involved; that the Superintendent has no control and no right to interfere, or to represent, in any way, the two full-blood orphan minors in this case because they are unallotted minors; that these wards were not among the number that were put on the Osage roll and to whom the division and allotment of lands and funds were given; that the property of the Osage Tribe was segregated by the Act of 1906, and divided among the members of the tribe, and the lands allotted to the members thereof; and that only those persons to whom lands were allotted under the Act of 1906, can be termed allottees, and that these wards, not having received allotments under the Act of 1906, cannot be included in the word "allottee" as referred to in section 3 of the Act of 1912.
The Act of 1906, which was an act for the division of lands and funds of the Osage Indians, provided for the making of a roll to include living members as of January 1, 1906, and all children born up to July 1, 1907. It appears that this roll on which allotments of lands were made contained 2,229 members. The Indian minors in this case were born subsequent to July 1, 1907, and therefore are not allottees, and have no Osage property in their right. What they have is derived by descent from their deceased parents, who were full-blood Osage allottees. It is true that those born after July 1, 1907, did not participate in the division of land except by inheritance. They did, and do, however, participate in the division of money derived from the oil, gas, bonuses, and royalties through their deceased ancestors. It does not follow, because these Osage minors were not born at the time the rolls were closed and therefore were not allottees, that they are not members of the Osage Tribe of Indians.
It was said in U.S. v. Kagama, 118 U.S. 375:
"These Indian tribes are the wards of the nation. They are communities — dependent upon the United States. * * * From their very weakness and helplessness so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and, with it, the power."
This language is quoted with approval in the more recent case of U.S. v. Nice, 241 U.S. 591, in which Justice Van Devanter states in the opinion, after citing the Kagama Case, supra, and other decisions of the Supreme Court of the United States of the same import:
"What was said in these cases has been repeated and applied in many others." Citing many decisions.
In this connection, it may be observed that the case of In re Heff, 197 U.S. 488, cited by the appellee, in which it is said:
"Can it be that because one has Indian, and only Indian, blood in his veins, he is to be forever of a special class over whom the general government may, in its discretion, assume the rights of guardianship, which it has once abandoned, and this whether the state or individual himself consents? We think the reach to which this argument goes demonstrates that it is unsound"
— was overruled in U.S. v. Nice, supra.
Section 3 of the Act of 1912 authorizes *Page 118 
the Superintendent of the Osage Agency, or the Secretary of the Interior, whenever he deems the same necessary, to investigate the conduct of executors, administrators, and guardians or other persons having in charge the estate of any deceased allottee, or of minors, or persons incompetent under the law of Oklahoma, and whenever he shall be of opinion that the estate, in any manner, is being dissipated or wasted, or is being permitted to deteriorate in value by reason of the negligence, carelessness or incompetency of the guardian or other person in charge of the estate, the Superintendent of the Osage Agency, or the Secretary of the interior, or his representative, shall have power and it shall be his duty to report said matter to the county court and take the necessary steps to have such case fully investigated.
Section 3 of the act further provides that:
"Every bond of the executor, guardian, or other person in charge of the estate of any Osage allottee shall be subject to the provisions of this section and shall contain therein a reference hereto."
It is admitted that the guardian in this case is in possession of the estates of the Osage allottees, the father and mother of Irene and Anna Pitts, the same having been inherited by them from their ancestors, who were full-blood Osage Indians. The guardian in this case has no other estates except inherited estates, which estates, we think, it is made the duty of the Superintendent of the Osage Agency to protect under the clear provisions of the Act of 1912.
Section 6 of the Act of 1912 provides that the shares due minor heirs, including such minor Indian heirs as may not be tribal members and those Indian heirs not having certificates of competency, shall be paid into the Treasury of the United States and placed to the credit of the Indians upon the same conditions as attach to segregated shares of the Osage national fund; or, with the approval of the Secretary of the Interior, paid to the duly appointed guardian. This provision contemplates that Indian heirs not allotted are recognized as members of the tribe.
In the case of La Motte v. U.S. 256 Fed. 5, 13, the following language is used:
"Has the government retained its control over the disposition of noncompetent Osage Indians and of Osage lands, no matter from what source those lands came to such noncompetent? If such control is retained, it must be found in the act now under consideration."
The court then says:
"We therefore conclude that Congress intended to and did, in this act, retain for 25 years such control over the Osage lands of noncompetent Osage Indians from whatever source they were derived."
In the above case it appears that one of the minor heirs, a son was unallotted.
In La Motte v. U.S., 254 U.S. 570, 577, the court says:
"The defendants have leases of restricted lands, belonging to minor allottees or minor heirs, which were given by guardians with the sanction of the local courts, in which the guardianships were pending, but were not approved by the Secretary of the Interior. The district court ruled that the Secretary's approval was not required and the Circuit Court of Appeals held to the contrary. We take the latter view. It is supported by the comprehensive words of the concluding proviso of the leasing provision and is strengthened by the second qualification found in section 3 of the Amendatory Act of 1912, under which the local courts obtain probate jurisdiction over the property of such minors and by the proviso in section 6 of that act relating to the partition of inherited lands."
The second qualification, referred to in the above case, is "orphan minor." The county court having jurisdiction over the property of such Indian minors by virtue of the provisions of section 3, of the Amendatory Act of 1912, it follows we think, that the other provision of the act, that the Superintendent of the Osage Agency shall be served with a copy of all papers, is applicable and must be complied with before the county court can make any binding order respecting the property of such minors.
In Kenney v. Miles, 250 U.S. 58, 63, the court, in referring to the Allotment Act of 1906, and the Amendatory Act of 1912, says:
"The Act of 1912, in its sixth section, treats the restraints applicable to living allottees as also applicable to such of the heirs of deceased allottees as are members of the tribe and expressly provides 'When the heirs of such deceased allottee have certificates of competency, * * * the restrictions on alienation are hereby removed. * * *' Under the Act of 1906, the death of a member entitled to an allotment does not extinguish his right. According to the implication of the act and the administrative ruling the allotment still may be made in his name. Where this is done he is regarded as the allottee and his heirs as taking by descent from him. Such an allotment and all others are made under one comprehensive provision, in which there is no distinctive mention of either living or deceased members. The restrictions are imposed by another provision equally comprehensive and it makes no distinction between lands allotted to living members and *Page 119 
those allotted in the right of deceased members. Nor is any such distinction made in the section dealing with descent. When they are Indians they are equally within the occasion for the restrictions, whether the allotment be to a living member or in the right of one deceased. (Talley v. Burgess, 240 U.S. 104, 108); and in either case some may be without any allotment of their own, because born after the time for closing the roll. Thus those who take under allotments made in the right of deceased members are no less within the letter and spirit of the restrictions than are other heirs. That all are intended to be protected is shown by the leasing provision, which requires that 'all leases' on the part of heirs shall have the approval of the Secretary of the Interior."
As affording one means of protecting the property rights of minor Osage Indians, whether allotted or unallotted, the Act of 1912 requires that a copy of all papers filed in the county court respecting such minor's interests shall be served on the Superintendent of the Osage Agency at the time of filing. This requirement, we think, is mandatory, and the failure to perform it, as in this case, deprived the county court of jurisdiction.
We conclude that the district court of Osage county erred in affirming the order of the county court by reason of the admitted fact that no notice was served upon the Superintendent of the Osage Agency of the application of the guardian, the Citizens Trust Company, made in the county court to approve the contract in question.
We think the judgment of the district court should be reversed and remanded, with directions to set aside the order approving the contract involved in the case.
By the Court: It is so ordered.