FIRST NATIONAL BANK OF WALTHILL, APPELLEE, v. EUNICE WOODHULL STABLER, APPELLANT.

FILED MARCH 8, 1929. No. 26205.

*James C. Kinsler, A. C. Epperson, George A. Keyser, William J. Froelich* and *Philip M. Aitken,* for appellant.

*Roy B. Carlberg, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD and THOMPSON, JJ., and REDICK, District Judge.

ROSE, J.

This is an action on a promissory note for $829.70, dated February 6, 1926, payable six months hence, and bearing interest at the rate of 10 per cent. per annum. The payee is the First National Bank of Walthill, plaintiff, and the maker is Eunice Woodhull Stabler, defendant. There was no personal or substituted service of summons on defendant in Nebraska, but a summons was served upon her in Kansas. She was a nonresident of the state, and on that ground plaintiff attached as her property 80 acres of land in Thurston county, described as the south half of the southwest quarter of section 2, township 24 north, range 8 east of the sixth principal meridian. The value of the land attached was fixed by appraisers at $8,000.

Defendant asked the court to dissolve the attachment for want of jurisdiction and for the further reason that she had no attachable interest in the land. Her objections to jurisdiction may be summarized as follows: She is an incompetent Omaha Indian, and a ward of the United States. The only source of jurisdiction is the attachment which is void. Defendant has never been in possession of the attached land and has only an equitable interest which is not marketable or attachable. The government holds the title subject to the equitable rights of defendant. May 23, 1900, the United States issued to Lucy Woodhull, an incompetent Omaha Indian and ward of the government, a restricted patent under the act of congress of March 3, 1893. 27 U. S. St. at Large, 612. The patent contains the following provisions:

"That this patent shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indians to whom such allotment shall have been made, or in case of his decease, of his

heirs, according to the laws of the State of Nebraska, and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

The following facts, briefly stated, were also alleged in support of the objections to jurisdiction: By executive order issued January 28, 1925, pursuant to law the trust period of 25 years was extended 10 years. Ever since May 23, 1900, the land has been held by the government in trust for Lucy Woodhull and her successors in interest. Lucy Woodhull died May 18, 1911, leaving a will, since probated, devising to her husband Spafford Woodhull a life interest in the land. The will devised the estate in remainder to four children of testatrix, one of them being defendant, who, November 2, 1916, acquired by deed the interests of the three other children. The children of testatrix were Indian wards of the United States and the land has never been subjected to any indebtedness of defendant and is exempt from attachment. Spafford Woodhull now owns a life estate in the land. The objections to jurisdiction and the motion to dissolve the attachment were based on the facts outlined. The will was approved by the department of the interior.

For the purposes of the hearing upon the objections to jurisdiction and upon the motion to quash the attachment, the parties stipulated in effect: May 23, 1900, Lucy Woodhull was an incompetent Omaha Indian residing upon the Omaha Indian reservation. She received a restricted trust patent of allotment for the land in controversy. She died May 18, 1911, leaving a will in which she devised a life estate in the land to her husband and the remainder to her four children, one of them being Eunice Woodhull Stabler, defendant. Under a deed dated November 2, 1916,

and approved by the secretary of the interior May 16, 1917, defendant acquired the interests of the other children of testatrix, subject to the husband's life estate which has not been extinguished.

To sustain the attachment plaintiff insists that the fee simple title passed from the United States under the approved will of Lucy Woodhull and vested in her devisees, and that the deed to defendant from the other devisees passed the fee simple title to her. In this connection plaintiff argues that the will and the deed upon their approval by the secretary of the interior, pursuant to acts of congress, terminated the trust period and passed the title from the United States to her.

The trial court adopted plaintiff's view of the case, overruled the motion to dissolve the attachment and the objections to jurisdiction, entered judgment on the note against defendant for $829.70 and interest, and ordered the sale of the land to satisfy the debt, interest and costs. Defendant appealed.

Error is apparent in the proceedings. According to the stipulation of the parties Spafford Woodhull owns a life estate in the land. He is not a party to the suit. A cause of action against him is not stated. There is nothing in the record to show that he is indebted to plaintiff. His life estate is included in the attachment and the judgment orders the sheriff to sell it for the debt of defendant to plaintiff. There is therefore error in the judgment and to that extent it cannot be permitted to stand. This is conceded by plaintiff, and the only matter in controversy between the parties to the action is the proposition that the United States, through the interior department's approval of the will and the deed, pursuant to acts of congress, passed the legal title, temporarily held in trust for an incompetent Indian, to the beneficial owner or owners of the land. This is a federal question. A ruling of the United States supreme court on the precise point has not been cited or found, but *La Motte v. United States,* 254 U. S. 570, indicates the view that federal courts will take when

a controversy like the present one is properly presented for determination. In that case the following provision of an act of congress was construed:

"Any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will, in accordance with the law of the state of Oklahoma: Provided, that no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the secretary of the interior." 37 U. S. St. at Large, ch. 83, sec. 8, p. 88; *La Motte v. United States,* 254 U. S. 570.

Referring to this legislation the supreme court of the United States said:

"This provision is broadly written, is in terms applicable to restricted lands and funds, and enables the Indian to dispose of all or any part of his estate by will, in accordance with the state law, if his will be approved by the secretary. True, it does not say that a disposal by an approved will shall put an end to existing restrictions, but that is an admissable, if not the necessary, conclusion from its words. After its enactment the secretary of the interior construed it as having that meaning, and it was administered accordingly in that department up to the time of this suit. And that congress intended it should have that meaning is at least inferable from a general act of the next session respecting wills by Indian allottees and their approval by the secretary (37 St. at Large, ch. 55, p. 678) ; for that act, while providing that 'the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period,' expressly excepted the Osages from its reach. These matters apparently were not brought to the attention of the court below. We regard them as of sufficient weight to put the question at rest. In one of the wills the testator attempted to impose an indefinite restraint on the devisee's right to alienate the land; but, whether the attempt be tested by the

common law or by the local statutes, it plainly was of no effect." *La Motte v. United States*, 254 U. S. 570, 579.

In the present case plaintiff relies upon the congressional act of June 25, 1910, which provides:

"Any Indian of the age of twenty-one years, or over, to whom an allotment of land has been or may hereafter be made, shall have the right, prior to the expiration of the trust period and before the issue of a fee simple patent, to dispose of such allotment by will, in accordance with rules and regulations to be prescribed by the secretary of the interior: Provided, however, that no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the commissioner of Indian affairs and the secretary of the interior: Provided further, that sections one and two of this act shall not apply to the state of Oklahoma." 36 St. at Large, ch. 431, sec. 2, p. 856.

While this latter act was in full force, Lucy Woodhull died May 18, 1911, leaving a will in which she devised a life estate in the land attached herein to her husband and the estate in remainder to her four children. This will was approved by the department of the interior and subsequently probated. Reasoning by analogy from the opinion in the case cited, the act of congress, the will, the approval of the department of the interior and the decree of the probate court had the effect of terminating the trust period and of transferring to defendant an interest in the real estate described, an interest subject to attachment for the debt of defendant. The attachment, however, was erroneous as already stated, and is therefore dissolved as to the life estate. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Attachment, 6 C. J. 193 n. 69—Wills, 40 Cyc. 999 n. 53.