## DRUMMOND v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
September 9, 1929.

No. 8259.

Charles B. Wilson, Jr., and H. R. Duncan, both of Pawhuska, Okl., for appellant.

Louis N. Stivers, Asst. U. S. Atty., of Tulsa, Okl.

Before KENYON, Circuit Judge, and FARIS and SANBORN, District Judges.

SANBORN, District Judge. On February 7, 1919, Albert Penn, an Osage Indian, gave a warranty deed of the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of section 17, township 26, range 10 east of the Indian meridian, in Osage county, Oklahoma, to the appellant, R. C. Drummond. Thereafter the United States brought this action to set aside this deed, and prevailed. From the decree in its favor, this appeal is taken.

The facts are not in dispute. The land in question was a part of the Osage tribal lands, and was allotted to Albert Penn and Augustine Choteau Crow, as heirs of Mary Penn, deceased, pursuant to the Osage Allotment Act of June 28, 1906 (34 Stat. 539). Under this act, this land was inalienable for 25 years unless a certificate of competency was issued to the Indians by the Secretary of the Interior. No such certificate was issued to these Indians. The Act of March 3, 1909 (35 Stat. 778), provided:

"That the Secretary of the Interior be, and he hereby is, authorized and empowered, upon application, to sell, under such rules and regulations as he may prescribe, part or all of the surplus lands of any member of the Kaw or Kansas and Osage Tribes of Indians in Oklahoma: Provided, that the sales of the Osage lands shall be subject to the reserved rights of the tribe in oil, gas, and other minerals."

Pursuant to this act, the Secretary of the Interior promulgated rules and regulations with reference to sales and the taking of security for deferred payments of the purchase price. Section 4 of amended regulations, approved February 9, 1910, provided:

"In the event of the default of the purchaser in making any of the deferred payments, or the interest thereon, or the taxes assessed against the land, the Secretary of the Interior may direct the foreclosure of the mortgage in the name of the vendor. Should the land upon foreclosure sell for sufficient to pay the mortgage, interest and cost of foreclosure, the amount due the vendor shall be placed to his credit in the manner herein provided for deferred payments; but in the event the land on foreclosure shall not sell for sufficient to make the deferred payments, interest and costs, then the Secretary may direct that the land be bought in by the allottee, in which event

it shall thereafter be held by him under the same restrictions and limitations as before the original sale, unless in the meantime a certificate of competency shall have been issued to him, and the deeds and mortgage executed hereunder shall so provide."

By deed dated June 6, 1910, these Indians conveyed this land to C. W. Brown and J. M. Boren. The deed contained the following habendum clause:

"To have and to hold the said described premises unto the parties of the second part, their heirs, executors, administrators and assigns, forever; subject, however, to all the conditions, limitations and provisions of the Act of Congress of March 3, 1909 (35 Stat. 778), and the Act of June 28, 1906 (34 Stat. 539), one of which is that the oil, gas, coal and other minerals covered by the lands hereby conveyed are reserved to the Osage Tribe for a period of twenty-five years from the eighth day of April, ninteen hundred and six; subject also, to the payment of five hundred and forty and no/100 dollars, lawful money of the United States, as evidenced by a mortgage and notes of even date herewith; and it is hereby expressly covenanted and agreed by the party of the first part that in the event the title to the lands shall revert to them by foreclosure proceedings, or otherwise, they will hold the same subject to all the conditions and limitations attaching thereto at the time of the sale hereby effected."

This deed was approved by the Secretary of the Interior on February 8, 1911, and was duly filed and recorded.

On January 19, 1911, Brown and Boren and their wives executed to the Indian grantors a purchase-money mortgage upon this land, which contained the following clause:

"This grant is intended as a mortgage to secure the payment of the sum of five hundred and forty and no/100 dollars, lawful money of the United States, according to the terms of three certain nonnegotiable promissory notes of even date herewith. And this conveyance shall be nonnegotiable and shall be void if such payments be made as in this note specified; but if default be made in said payments, or any part thereof, or the interest thereon, or if default be made in the payment of the taxes on the lands therein described, as required by law, then this conveyance shall become absolute and it shall be lawful for the parties of the second part, their executors or administrators, at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law, and out of the money arising from such sale to retain the amount due

as principal, interest, taxes and costs; and for the said consideration the parties of the first part hereby waive appraisement of said premises."

This mortgage was approved by the Secretary of the Interior on the 8th day of February, 1911, and was duly filed and recorded. Default was afterwards made by the grantees and mortgagors in the payment of the indebtedness secured by the mortgage, and, in settlement thereof, the land was redeeded to the Indians by Brown and Boren and their wives by general warranty deed acknowledged July 7, 1913. The habendum clause of this deed is:

"To have and to hold said premises unto the said parties of the second part, their heirs, executors, administrators and assigns forever, and it is further expressly agreed by and between the parties hereto and the grantee herein named, a member of the Osage Tribe, hereby expressly consents and agrees that the title to the said land above described shall be and remain subject to all the conditions, limitations, and provisions of the Act of Congress of June 28, 1906 (34 Stat. 539), in all respects the same as though said lands had not been conveyed to the said party of the first part, and shall be and remain inalienable for a period of twenty-five years from the first day of January, 1907, except as provided by Act of Congress, and with the consent and approval of the Secretary of the Interior."

This deed was approved by the Secretary of the Interior on January 28, 1914, and was recorded and filed.

On December 26, 1914, Augustine Crow gave to Albert Penn a warranty deed to this land, which deed contained the following condition:

"Subject to the condition that no deed, mortgage, power of attorney, contract to sell or other instrument affecting the land herein described shall be of any force or effect or capable of confirmation or ratification, unless approved by the Secretary of the Interior, or his successor in office."

The deed also contained the following habendum clause:

"To have and to hold said described premises unto the said party of the second part, his heirs, executors, administrators, and assigns, forever, subject, however, to all the conditions, limitations and provisions of the Act of Congress of March 3, 1909 (35 Stat. 778), and the Act of June 28, 1906 (34 Stat. 539), one of which is that the oil, gas, coal or other minerals covered by the land hereby conveyed are reserved to the Osage Tribe for

a period of twenty-five years from the eighth day of April, nineteen hundred and six."

This deed was approved by the Secretary of the Interior on the 23d day of March, 1915, and duly filed and recorded.

This was the state of the title when Albert Penn executed to R. C. Drummond his general warranty deed to the land in question, subject only to the requirements of the Act of Congress of June 28, 1906, relative to underlying minerals. This deed was not approved by the Secretary of the Interior nor made or delivered with the consent or under the supervision of that official.

The court below reached the conclusion that on February 7, 1919, the land was still restricted, that the deed to Drummond was therefore void, and that title was in the heirs of Albert Penn, who was then deceased.

The appellant claims that, because this land was sold to Brown and Boren with the approval of the Secretary of the Interior and was thereafter reconveyed by them to these Indians in settlement of the mortgage indebtedness, the restrictions were removed; that, therefore, the deed from Crow to Penn, attempting to restrict the power of alienation, was ineffective to impose restrictions in contravention of the common law; and that Penn had an unrestricted fee title, which he conveyed to the appellant by the deed of February 7, 1919. It is conceded by the appellant that if the mortgage given by Brown and Boren had been foreclosed, pursuant to the regulation of the Secretary of the Interior hereinbefore set forth, and the title had thereby revested in these Indians, they would have held this land subject to the original restrictions; but it is contended that the method which was adopted to secure the surrender of the lands by Brown and Boren to the Indians for nonpayment of the balance of the purchase price was not covered by the regulations and that the condition in the deed from the mortgagors that the land should be subject to restrictions was ineffectual.

To support his contention, the appellant relies mainly upon the cases of Levindale Lead & Zinc Co. v. Coleman, 241 U. S. 432, 36 S. Ct. 644, 60 L. Ed. 1080, and La Motte v. United States, 254 U. S. 570, 41 S. Ct. 204, 65 L. Ed. 410, as well as the cases holding that a restriction against alienation contained in a deed at common law is invalid. See 8 R. C. L. 1114.

In the first case the question was whether Coleman, a white man, who had received by inheritance from his Osage wife and child an interest allotted in their right, held such lands subject to the restrictions against alienation imposed by the act of 1906. The court said (241 U. S. 440, 36 S. Ct. 644, 647, 60 L. Ed. 1080):

"We confine ourselves to the single point presented. There is no controversy whatever as to the authority of the Secretary of the Interior, where there are undivided interests belonging to Indians, adequately to protect those interests according to the statutory provisions to this end. Our conclusion simply is that the act of 1906 placed no restrictions upon the alienation of land, or undivided interests in land, of which white men who were not members of the tribe became owners."

This case is merely authority for the proposition that the act of 1906 was passed for the benefit and protection of members of the tribe, and not nonmembers, and that a nonmember, who had acquired absolute title by inheritance to an allotment or undivided interest therein, held it free of restrictions.

The second case relied on—La Motte v. United States—rules that leases of Osage lands which had become unrestricted and had been thereafter acquired by members of the tribe without certificates of competency, were valid without the approval of the Secretary of the Interior. It was also held in that case that, under section 8 of the amendatory Act of April 18, 1912 (37 Stat. 88), an adult Osage Indian may dispose of restricted lands by will approved by the Secretary of the Interior, and that a devisee will take the devise free from restrictions. This holding was based solely upon a construction of that section. The court also in its opinion says (254 U. S. 580, 41 S. Ct. 204, 208, 65 L. Ed. 410):

"In one of the wills the testator attempted to impose an indefinite restraint on the devisee's right to alienate the land; but, whether the attempt be tested by the common law or by the local statutes, it plainly was of no effect."

The case, then, is authority for the propositions that members of the Osage Tribe without certificates of competency may deal with lands from which the restrictions have been removed, that restricted lands may be taken by a devisee under an approved will and be unrestricted in the hands of the devisee, although he be an incompetent member of the tribe, and that indefinite restrictions as to alienation may not be imposed by such a will. The case does not hold that a condition of such a will imposing a definite restriction as to alienation, where the devisee named is an incompetent member of the

tribe, would not be valid, nor does it hold that such a restriction contained in a deed given pursuant to the act of 1909 would be ineffectual.

■ We think the government is right in its contention that, upon the surrender of the land by Brown and Boren to the Indians in settlement of the unpaid portion of the purchase price, the Indians held it subject to the original restrictions. In practical effect, the giving of the deed by the purchasers to the Indians was nothing more than the equivalent of a foreclosure. We find no case identical with this, but Smith v. McCullough, 270 U. S. 456, 46 S. Ct. 338, 70 L. Ed. 682, has a close analogy. On page 462 (46 S. Ct. 340) the court says:

"The first question on the merits is, whether the act of 1906 and the conveyance made to Kellett with the approval of the Secretary of the Interior took the land entirely out of the prior restrictions on its alienation, so that when that conveyance had served its purpose and the reconveyance to the allottee was made he was free to lease the land, and even to sell it, as he saw fit. The plaintiffs contend that the answer should be in the affirmative. Both courts below held the other way, and we think they were right. The act of 1906 did not accord to the allottee an unqualified right of alienation, but a right which was to be exercised only under the supervision and with the approval of the Secretary of the Interior. Nor was the conveyance to Kellett an absolute alienation. In terms and effect it was a conditional conveyance, called a mortgage, and the contingency which might have converted it into an absolute alienation never happened. The Secretary's approval was of that particular conveyance and of course was measured by its terms and purpose. When the condition on which the conveyance was to be null and void was performed and the reconveyance was made the situation was essentially the same as if there had been no conveyance. In substance a lien had been created with the Secretary's approval and then extinguished, thus leaving the land subject to the restrictions."

It is contended here, of course, that the deed to Brown and Boren was intended to convey to them an unrestricted title, but the condition was that it was to be unrestricted in their hands only, and that if it reverted by foreclosure or otherwise, it was then to be held by the Indians as originally. To hold that the failure of the Secretary of the Interior to promulgate a regulation covering the contingency of a surrender without foreclosure should result in a removal of restrictions

in such a case, would be to defeat the obvious intent and purpose of the government to afford the Indians the protection intended for them. Looking at substance, and not form, we think that it is clear that the transaction with Brown and Boren was nothing more than an abortive sale of a restricted allotment.

■ It is further contended by the appellant that—even if the land came back to the Indians subject to the original restrictions—when the Secretary of the Interior approved the sale by Crow to Penn of her interest in the land, Penn took such interest free from restrictions, regardless of the conditions in the deed, they being void as restrictions upon the power of alienation, and that the deed to the appellant of February 7, 1919, conveyed a fee title to at least this unrestricted interest. This contention must be based upon the theory that the Secretary of the Interior could approve no deed conveying less than an unrestricted fee title even as between incompetent members of the tribe. We find no authority for that contention.

In Sunderland v. United States, 266 U. S. 226, 233, 45 S. Ct. 64, 65, 69 L. Ed. 259, we find this statement, which we think is appropriate here:

"Nor are we called upon to determine whether a qualified and limited restraint upon the alienation of a fee simple title, imposed by an ordinary grantor upon an ordinary grantee, would be valid, even though not offensive to the rule against perpetuities. However that may be, we do not doubt the power of the United States to impose such a restraint upon the sale of the lands of its Indian wards, whether acquired by private purchase and generally subject to state control or not. Such power rests upon the dependent character of the Indians, their recognized inability to safely conduct business affairs, and the peculiar duty of the federal government to safeguard their interests and protect them against the greed of others and their own improvidence. See and compare Libby v. Clark, 118 U. S. 250, 255, 6 S. Ct. 1045, 30 L. Ed. 133; United States v. Paine Lumber Co., 206 U. S. 467, 473, 27 S. Ct. 697, 51 L. Ed. 1139; Blanset v. Cardin, 256 U. S. 319, 326, 41 S. Ct. 519, 65 L. Ed. 950; Bunch v. Cole, 263 U. S. 250, 252, 44 S. Ct. 101, 68 L. Ed. 290; Sperry Oil Co. v. Chisholm, 264 U. S. 488, 493, 44 S. Ct. 372, 68 L. Ed. 803. And the power does not fall short of the need; but, so long as they remain wards of the government, justifies the interposition of the strong shield of federal law to the end that they be not overreached

or despoiled in respect of their property of whatsoever kind or nature. United States v. Kagama, 118 U. S. 375, 383, 384, 6 S. Ct. 1109, 30 L. Ed. 228."

The Secretary of the Interior was not compelled to permit Crow to sell her undivided interest to Penn free of restrictions if she was to sell at all. As was said in the case of United States v. Brown (C. C. A.) 8 F.(2d) 564, the right to withhold consent includes the right to impose conditions, and such conditions may be imposed independently of formal regulations. What the Secretary of the Interior clearly permitted and arranged for in approving the deed from Crow to Penn was a conveyance of the actual interest which Crow had in these lands. She held them subject to the restrictions imposed by the act of 1906, and she was permitted to deed to Penn what she herself had and nothing more.

We reach the conclusion that there was nothing unlawful or contrary to public policy in maintaining the original restrictions upon this land in the hands of these Indians by imposing the conditions found in the deed from Brown and Boren to them, in the deed from them to Brown and Boren, and in the deed from Crow to Penn, and that such conditions were valid as affecting these lands. In fact, all that was done by the Secretary of the Interior to safeguard this land in the hands of these incompetent Indians appears to have been done in furtherance of the policy of the United States to adequately protect their interests in allotted lands so long as they are in need of protection. While the facts are not the same we think that the general principles announced in Sunderland v. United States, supra, in Smith v. McCullough, supra, and in United States v. Brown, supra, sustain our views.

The decree is affirmed.