**C. C. BLEDSOE, Appellant,**

v.

**UNITED STATES of America and Lorena Mashburn, Appellees.**

**No. 8075.**

United States Court of Appeals Tenth Circuit.

July 28, 1965.

Rehearing Denied Aug. 27, 1965.

Bruce W. Gambill of McCoy, Kelly & Gambill, Pawhuska, Okl., for appellant.

Elizabeth Dudley, Atty., Dept. of Justice, Washington, D. C. (J. Edwards Williams, Acting Asst. Atty. Gen., John M. Imel, U. S. Atty., Sam E. Taylor, Asst. U. S. Atty., and Roger P. Marquis, Atty., Dept. of Justice, with her on the brief), for appellees.

Before MURRAH, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The United States brought this action in the United States District Court for the Northern District of Oklahoma, seeking to remove Bledsoe, an alleged trespasser, from a leasehold of 160 acres of restricted Osage Indian land, and a declaratory judgment determining the rights of Bledsoe and Lorena Mashburn to a lease on the property. At the time the action was filed Bledsoe was claiming the right to possession of the land under lease No. 40910, which had expired by its terms on March 31, 1963. Mashburn claims the right to present possession of the property by virtue of lease No. 41928, executed November 21, 1962, to become effective for a 5-year term on April 1, 1963. The land is owned in equal undivided interests by Vivian Osage Big Eagle, Andrew Harry Nuckolls, and Homer Troy Big Eagle, restricted Osage Indians. Vivian is an incompetent, represented by Betty Wayman, her appointed guardian; Andrew is a minor, residing with his adoptive parents, Mr. & Mrs. Thomas L. Nuckolls; and Homer is a minor in the custody of Dorothy Robinson, pursuant to a state court decree following the divorce of his parents. Homer's natural mother is Hazel Robinson. His natural father is deceased.

When the notice to quit the premises was served upon Bledsoe, he had been in possession of the property nearly a year beyond the expiration date of his lease. Shortly after receipt of the notice, he tendered a check in the amount of one year's rental to the Superintendent of the Osage Indian Agency. This payment was accepted. After the institution of this action, Bledsoe, on July 20, 1964, again tendered a year's rental, purporting to cover the period from April 1, 1964 to April 1, 1965. This latter payment was refused. In his answer, in addition to the foregoing payment and tender, Bledsoe alleged that he had been in possession of the land for more than 12 years and that

he then held a lease for the period through March 31, 1966, "from non-Osage Hazel Robinson, natural mother of Homer Troy Big Eagle, and Thomas Nuckolls, adoptive father of Andrew Harry Nuckolls."

The Mashburn lease, to which Bledsoe objects, was executed for Vivian, Andrew and Homer by their respective representatives. As so executed, the Mashburn lease was approved by the Superintendent. It is Bledsoe's principal contention that the Superintendent lacked authority to approve the Mashburn lease as to all interests because the lease was executed by only two of the three proper parties. He urges that under Oklahoma law, the proper person to sign for Homer Troy Big Eagle is his natural mother, rather than the court-appointed custodian, because upon death of one natural parent the custody of a minor child vests in the surviving parent. Bledsoe cites Hughes v. Bowen, 193 Okl. 269, 143 P.2d 139, as authority for his position. However that case involved a situation in which the mother was awarded the custody of minor children, and the mother subsequently died leaving no one in legal custody of the children. The court concluded that under these circumstances the custody then automatically inured to the surviving parent and the divorce court was without jurisdiction to award custody to anyone else. When the Big Eagles were divorced, both were adjudged to be unfit parents and the custody of the minor child, Homer, was awarded to Dorothy Robinson. We do not think that the rule of Hughes v. Bowen, supra, should be extended to include the present situation where the custody of the child is in a third person. In the absence of a controlling interpretation of state law, we will accept the determination of the trial court unless clearly erroneous. First National Bank and Trust Company of Oklahoma City, Oklahoma v. Foster, 10 Cir., 346 F.2d 49, and cases cited. It follows, then, that Dorothy Robinson, as custodian of Homer, was a proper person to execute

the lease in his behalf.[1] Bledsoe had contended that since the lease was improperly executed it was the Superintendent's duty to advertise and offer it for competitive bidding. The finding that it was properly executed also disposes of that contention.

Bledsoe also contends that the trial court erred in finding him a trespasser rather than a tenant at will, as defined by Oklahoma law. As a tenant at will, he would be entitled to 30 days notice before termination of the tenancy, whereas the notice to quit served upon him demanded termination in three days. However, the leasing of restricted Indian lands, and the right to enter and remain thereon, is a matter regulated by federal law. See, Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Bunch v. Cole, 263 U.S. 250, 44 S.Ct. 101, 68 L.Ed. 290; La Motte v. United States, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410; 42 C.J.S. Indians § 57. But even if Bledsoe's rights were not controlled by federal law, it does not appear that he was a tenant at will under Oklahoma state law. In fact, under the Oklahoma Statute, he was not entitled to any notice to quit. Okl.Stat.Ann. Tit. 41, § 8 provides that "When the time for the termination of a tenancy is specified in the contract, or where a tenant at will commits waste, or in the case of a tenant by sufferance, and in any case where the relation of landlord and tenant does not exist no notice to quit shall be necessary." The termination date of Bledsoe's lease was clearly set forth therein, making notice to quit unnecessary. Berry v. Opel, 194 Okl. 670, 154 P.2d 575; Simmons v. Fariss, Okl., 289 P.2d 372. Moreover, to be a tenant at will one must hold over with the assent of the landowner, O.S.A. Tit. 41, § 1. Without such assent, the tenancy is merely at sufferance and similarly no notice to quit is required. Hancock v. Maurer, 103 Okl. 196, 229 P. 611. Bledsoe argues that he acquired the necessary assent by virtue of paying one year's rental after the termination of the lease which was accepted, and tendering the second year's rental which was refused. Even if it were relevant here, consent should not be implied from the payment of rent when it was made at the end of the holdover period, and then only after demand for payment had been made as part of the notice to quit.

Bledsoe's sole remaining contention is that he was entitled to have a review of the administrative determination of the Secretary's approval of the Mashburn lease. However, having found the lease to have been properly executed, further discussion is unnecessary.

Affirmed.

---

1. 25 C.F.R. § 131.3, (26 F.R. 10966, 10967) provides in part:

"The following may grant leases: * * * (3) the guardian, conservator or other fiduciary, appointed by a state court or a tribal court operating under an approved constitution or law and order code, of a minor or persons who are non compos mentis or are otherwise under legal disability, * * *."