## UNITED STATES v. HOWARD et al.
### No. 963.

District Court, N. D. Oklahoma.
Nov. 7, 1934.

C. E. Bailey, U. S. Dist. Atty., and Chester A. Brewer, Asst. U. S. Dist. Atty., both of Tulsa, Okl., for the United States.

Hamilton & Howard, of Pawhuska, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

This action was instituted by the United States for the benefit of full-blood members of the Osage Tribe of Indians for the purpose of canceling conveyances and quieting the title to lands inherited by such full-blood members of the tribe from a deceased full-blood Osage Indian. The land involved is in Osage county, Okl., and is part of the original allotment of Wah-hrah-um-pah, full-blood restricted Osage Allottee No. 295, who died intestate on or about December 12, 1911, without having received a certificate of competency. The deceased left surviving her, as her sole and only heirs at law, two daughters —Patricia Butler, née Harris, otherwise known as Clementine P. Harris, now Patricia Butler Waters, and Grace Entoka Abbott, both full-blood Osage allottees who have not been granted certificates of competency. By the law of descent and distribution of the state of Oklahoma (St. 1931, § 1614 et seq.), the two daughters inherited the lands involved in this action, in equal shares. Subsequent to the decease of the original allottee, one of the heirs, Clementine P. Harris, instituted a partition suit against the other heir, Grace Entoka Abbott, in the district court of Osage county. By regular proceedings in that court, a final decree of partition was entered setting over a part of the land to one of the daughters and another part to the other. Partition proceedings were conducted pursuant to the authority granted by section 6 of the Act of April 18, 1912 (37 Stat. 87). Pursuant to the provisions of the statute, the order of confirmation and the sheriff's deeds were submitted to the Secretary of the Interior for approval, and were approved by him on December 30, 1922. On April 7, 1931, Clementine P. Harris and her husband conveyed the portion of the real estate acquired by her in the partition suit, to the defendant D. C. Howard. On April 30, 1931, Grace Entoka Abbott and her husband conveyed the portion acquired by her in the same suit to Alfred A. Drummond. The other defendants claim under these grantees. The deeds from the two heirs were not approved by the Secretary of the Interior. The United States seeks by the bill of complaint filed herein to cancel the conveyances by the two heirs, and all of the conveyances from their grantees. The defendants have filed motion to dismiss. The question presented is whether the two grantors, the full-blood Osage Indian heirs, were capable of conveying the real estate without the approval of the Secretary of the Interior.

It has been determined, in the case of La Motte v. U. S., 254 U. S. 570, 41 S. Ct. 204, 65 L. Ed. 410, that land acquired by a member of the Osage Tribe of Indians without a certificate of competency, by purchase, could be alienated by the allottee without the approval of the Secretary of the Interior. This case was decided prior to the passage of the Act of Congress of February 27, 1925 (43 Stat. 1008 [25 USCA § 331 note]). The decided case held that the earlier Osage acts of 1906 and 1912 did not reimpose restrictions where restrictions have been removed, but subjected to restrictions all lands allotted to a member without certificate of competency, or lands inherited by him from another in whose hands they were restricted. It is insisted that since the lands in question were acquired by the two heirs by purchase, the cited case is controlling of the question here presented. Defendants contend that the acquiring of title by partition is an acquisition by purchase and not by inheritance, and that the cited case is controlling. There can be no question but that the title of the two heirs, acquired under a valid partition decree, must be treated as an estate by purchase and not of inheritance. United States v. Hale (D. C.) 39 F.(2d) 188; Id. (C. C. A.) 51 F.(2d) 629. I am of the opinion that on December 30, 1922, when the sheriff's deeds, transferring the property to the two heirs, as a result of a decree in the partition suit, were approved by the Secretary of the Interior without restrictions, the two heirs were the owners of the lands in question by purchase, free and clear of restrictions. The government contends that restrictions upon the lands were reimposed by section 3 of the Act of Congress on February 27, 1925 (25 USCA § 331 note), as follows: "Lands devised to members of the Osage Tribe of one-half or more Indian blood or who do not have certificates of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior. Property of Osage Indians not having certificates of competency purchased as hereinbefore set forth shall not be subject

to the lien of any debt, claim, or judgment except taxes, or be subject to alienation, without the approval of the Secretary of the Interior." Defendants undertake to narrowly construe the above act, and to limit its purpose to reimposing restrictions upon the alienation of lands devised to members of one-half or more Indian blood without certificates of competency under wills approved by the Secretary of the Interior, and to property of Osage Indians not having certificates of competency, purchased as set forth in the act. They insist that Congress did not intend to apply the language to lands acquired by purchase, and that the purpose of the act is to reimpose restrictions upon the property purchased as set forth in the act, which relate only to purchases made from the investments of funds of the Indians. It is contended that the land involved in this controversy does not fall under the classification of investments made in property, as contemplated by the act. The question for determination is whether the 1925 act reimposed restrictions upon lands acquired by partition, by restricted members of the tribe.

 It is well established that language of the statutes, relating to Indians, is construed favorably to them. Choate v. Trapp, 224 U. S. 665, 32 S. Ct. 565, 56 L. Ed. 941; Taylor v. Tayrien (C. C. A.) 51 F.(2d) 884. However, favorable constructions of such statutes must be reasonable and in accord with the language employed, as well as the intent and purpose inducing and compelling the passage of such legislation. A consideration of the report to Congress of the Committee of Indian Affairs, under date of March 5, 1924, with reference to the particular section involved in this case, is helpful in determining the intention of Congress in passing the act, which is as follows: "This section provides that the lands devised by will, approved by the Secretary of the Interior, and lands belonging to incompetent allottees, shall not be alienated without the consent of the Secretary of the Interior, thus preventing an incompetent Indian from disposing of the land so received without adequate consideration. This section also provides that property purchased for him, either real or personal, shall be inalienable, the purpose of which is to protect the property which is purchased under supervision; and there is little object or advantage in restricting and supervising the money paid out on behalf of any allottee, if that property in which the fund is invested is not also protected." It is to be observed that the report

specifically explains that lands devised by will, and lands belonging to incompetent allottees, shall not be alienated without the consent of the Secretary of the Interior. It expresses a meaning which goes beyond the contention of the defendants; it clearly evidences an intention by Congress to reimpose restrictions upon all lands belonging to incompetent allottees, without respect to the manner in which such lands were acquired. A reading of the act discloses that its purpose is to protect incompetent Osage allottees, and this protection comes about from a requirement of an approval of the Secretary of the Interior of conveyances. There can be no question but that Congress is authorized to reimpose restrictions upon lands which have become freed of such restrictions. I cannot accept the limited and narrow construction defendants seek to place upon the 1925 act. I cannot find an intention in the act to limit its effect to property purchased with funds coming to them. It clearly appears that lands devised to members of the tribe without competency certificates, and lands inherited by such Indians, were inalienable. There can be no question but that the lands involved in the instant suit were inherited by the two incompetent heirs; it can make no difference that the technical manner of acquisition is changed from inheritance to purchase by the partition proceedings; the act does not justify such a technical and limited construction as to eliminate from its effect lands which come by inheritance, and were changed in form to an estate by purchase by such partition proceeding. The purpose of the act plainly appears from the language employed in it; it undertook to reimpose restrictions upon all property whether inherited by or purchased for incompetent members of the tribe. In the instant case, the property involved came first by inheritance and then, by reason of the partition proceedings, the estate was changed to that of purchase; in my opinion the purpose and language of the act is sufficiently broad to include the lands in question.

I am of the opinion that the 1925 act of Congress reimposed restrictions upon all lands of incompetent Osage allottees, and that while the lands were freed in the partition proceeding, such restrictions were reimposed by section 3 of the Act of Congress of February 27, 1925. As such lands were restricted at the date of the conveyances, restrictions having been reimposed, such conveyances are void.

Motion to dismiss overruled.