COX et al. v. SMITH, Ex'r, et al.

No. 23820.    March 26, 1935.

Rehearing Denied April 16, 1935.

Robert Stuart, for plaintiffs in error.

J. M. Humphreys and Louis N. Stivers, Osage Tribal Attorney, for defendants in error.

PER CURIAM. This appeal is from a judgment of the district court of Osage county, affirming the judgment of the county court of that county denying the application of the plaintiffs in error for an order on the executor, Clayton N. Smith, of the estate of Henry Red Eagle to show cause why he should not sell 240 acres of land owned by Henry Red Eagle at the time of his death to pay a claim of plaintiffs in error.

Henry Red Eagle was a full-blood enrolled Osage Indian, No. 531, who had never received a certificate of competency. November 18, 1921, with his own personal accumulations he purchased from John D. Copeland and wife 240 acres of unrestricted land in Osage county, Okla., to wit: South half of south half, and northwest quarter of southwest quarter, of section 35, township 25, range 10; and lot 4, section 1, township 24, range 10. The deed was recorded March 22, 1921. March 26, 1923, for value, he with Paul Red Eagle, his son, and Celia Red Eagle (all as principals) executed to the Barnsdall National Bank, of Barnsdall, Okla., their note for $3,150, due June 26, 1923, with interest at 10 per cent. per annum from maturity, on which $150 was thereafter paid. The Barnsdall Na-

tional Bank consolidated with the First National Bank of Barnsdall, as the First National Bank. May 20, 1924, the First National Bank secured judgment by default against the Red Eagles on the note for $3,000 principal, and interest at 10 per cent. per annum from September 26, 1923, and $330 attorney's fees. which judgment December 15, 1926, by the receiver of the First National Bank, with the approval of the Comptroller of the Currency, was assigned to the plaintiffs in error.

Henry Red Eagle died October 28, 1929, seized of said land in fee-simple title, leaving a will approved by the Secretary of the Interior, devising it to his granddaughter, Margaret Hickey. Clayton N. Smith was appointed executor of the estate of Henry Red Eagle November 21, 1930, by the county court of Osage county, and the will probated. Notice was given to creditors, and in due time the plaintiffs in error presented their claim, the judgment above mentioned, to the executor, which was allowed by the executor and also by the county court. After the passage of the Act of Congress of March 2, 1929, plaintiffs in error presented the claim involved here to the superintendent of the Osage agency, and a hearing was had thereon. After the death of Henry Red Eagle, and after the claim had been presented to and allowed by both the executor and the county judge, no action having been taken by the superintendent, the executor presented the claim to the Secretary for approval and payment, who with the superintendent had and held under their supervision and control, in trust for Henry Red Eagle's estate, some $25,000. The Secretary authorized the payment of $3,000 out of said funds to the executor. The Commissioner of Indian Affairs recommended more, the amount not being shown. A check was delivered to the executor for said sum, $3,000, and the executor paid by his check, July 7, 1931, the money to Robert Stuart, as attorney for the plaintiffs in error, and requested a receipt and a statement of the balance due. A receipt in the nature of a letter was written to the executor acknowledging the receipt of the $3.000, part payment on the judgment, setting out fully the items of the judgment and the facts with reference thereto, and requesting the executor to endeavor to secure an allowance of the balance, $2,849.60. It does not appear that the executor endeavored to secure an allowance of the balance. The executor did not have in his possession or control sufficient personal property of the estate to pay the debt of plaintiffs in error.

October 29, 1931, plaintiffs in error made written application to the county court for an order upon the executor to show cause why he should not advertise and sell the above-described real estate to pay the claim of plaintiffs in error, and other debts of the estate, which application was set for hearing on the 10th day of November, 1931, and on that date the county court denied the application, and plaintiffs in error appealed to the district court of Osage county, which court March 16, 1932, affirmed the judgment of the county court. Motion for new trial was filed and overruled, and appeal from the district court regularly lodged in this court.

There is no controversy as to the facts. The evidence consists mostly of an agreed statement of facts and documents. Only two witnesses testified, those for plaintiffs in error. No response or pleading of any kind was offered or filed for defendants in error.

The learned trial court held that plaintiffs in error, by accepting the $3,000 from the Secretary, were precluded from pursuing other remedies for the collection of the remainder.

There are two grave legal questions involved in this appeal: (1) Was the land of Henry Red Eagle restricted and not subject to the payment of the claim of the plaintiffs in error? (2) Did the presentation of the claim of plaintiffs in error to the superintendent of the Osage Indian agency, and to the Secretary of the Interior for payment, and the payment made thereon by the Secretary estop and preclude plaintiffs in error from proceeding in this action?

The defendants in error take the affirmative of both questions, and the plaintiffs in error the negative.

It is agreed that the land in controversy when purchased (1921) by Henry Red Eagle was unrestricted, and that the money with which it was purchased was his own personal accumulations and unrestricted.

Was there any law in force at the time of the purchase that imposed restrictions upon the land as soon as the title vested in Henry Red Eagle? It is suggested in the brief of defendants in error, Margaret Hickey and Paul Red Eagle, that section 7 of the Act of Congress approved April 18, 1912 (37 Stat. L. 86), imposed restrictions upon the land as soon as it vested in Henry Red Eagle. The first portion of this act reads:

"That the lands allotted to members of

the Osage Tribe shall not in any manner whatsoever be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the issuance of a certificate of competency, or removal of restrictions on alienations; nor shall the lands or funds of Osage tribal members be subject to any claim against the same arising prior to grant of a certificate of competency."

The balance of this section, not quoted, applies to lands and moneys inherited from Osage allottees. The first part of this section quoted refers to allotted lands and, therefore, does not apply to the instant case. The last part of the quoted portion is broader:

"* * * nor shall the lands or funds of Osage tribal members be subject to any claim against the same arising prior to grant of a certificate of competency."

It is suggested that Henry Red Eagle did not have a certificate of competency and that, therefore, the described lands when vested in him were restricted and not subject to the payment of any claim; but this question has been settled against the suggestion of said defendants in error by the Supreme Court of the United States in the case of La Motte v. United States, 254 U. S. 570, 65 L. Ed. 410, decided January 24, 1921, in an opinion by Mr. Justice Van Devanter, in which Osage Indians not having certificates of competency had sold leases on lands that had become unrestricted, and referring thereto the learned Justice said:

"Some of the leases are for lands which were purchased by the lessors after the lands in regular course had become unrestricted. Because the lessors were members of the tribe, and without certificates of competency, the Circuit Court of Appeals held that the leases were subject to the Secretary's approval. The district court had held the other way. We think the district court was right. There is no provision in the Act of 1906 or that of 1912 which reimposes restrictions after they have been removed, or which subjects to restrictions all lands, however acquired, which a member without a certificate of competency may own."

It is conceded by the other defendant in error, D. E. Murphy, superintendent of the Osage Indian agency, that the Act of 1912 did not impose restrictions. We quote from his brief, at page 4.

"It is believed that the lands of Henry Red Eagle sought herein to be sold were unrestricted at the time they were purchased and were alienable up until the pas-

sage on behalf of the Osages of an Act of Congress of February 27, 1925 (43 Stat. L. 1008)."

But he contends that section 3 of the Act of 1925, supra, and the Act of 1929, together with the trend of the legislation on the subject, imposed restrictions upon the land in controversy. Section 3, supra, reads:

"Lands devised to members of the Osage Tribe of one - half or more Indian blood or who do not have certificates of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior. Property of Osage Indians not having certificates of competency purchased as hereinbefore set forth shall not be subject to the lien of any debt, claim, or judgment except taxes, or be subject to alienation, without the approval of the Secretary of the Interior."

Lands conveyed by will do not vest before the death of the devisor, and that part of this section relating to wills restricts lands in the devisee and it does not, by language or intent, impose restrictions on the lands in the devisor.

As suggested in Mr. Murphy's brief, this legislation may have been prompted by the fact that in the La Motte Case, supra, the Supreme Court had held that a will was a method of conveyance and the approval of a will by the Secretary removed restrictions, and the act passed to provide a rule different to the conclusion in that case. However, the thought of Congress was to continue restrictions in the donee and not to impose restrictions where none existed. It continued the restrictions on the land after it passed to the Indian to whom it was willed. The language of this section is not as far-reaching in imposing restrictions on Henry Red Eagle as that of the Act of 1912, which the Supreme Court held did not impose such restrictions. Therefore, this portion of this act was not broad enough to reach the lands while the title was in Henry Red Eagle.

The phrase in said section, "lands inherited by such Indians shall be inalienable," etc., is not involved here, because here the lands were conveyed by will and were not inherited.

The last part of section 3, which reads:

"Property of Osage Indians not having certificates of competency purchased as hereinbefore set forth shall not be subject

to the lien of any debt, claim or judgment," etc.

—has specific reference to property the purchase of which was provided for in section one of that act, which makes provision for the payment of accumulated funds of the Osage Indians to the members thereof, and then provides:

"The Secretary of the Interior shall invest the remainder, after paying the taxes of such members, in United States bonds, Oklahoma state bonds, real estate, first mortgage real estate loans not to exceed 50 per centum of the appraised value of such real estate, and where the member is a resident of Oklahoma such investment shall be in loans on Oklahoma real estate, stock in Oklahoma building and loan associations, livestock, or deposit the same in banks in Oklahoma, or extend the same for the benefit of such member, such expenditures, investments, and deposits to be made under such restrictions, rules, and regulations as he may prescribe."

The phrase in the last part of section 3, supra, refers to property purchased by the Secretary with restricted funds, trust funds, in his hands, and has no reference whatever to property purchased by independent accumulations of a member of the tribe.

Therefore, it is clear that this section did not impose restrictions upon the land in controversy while the title was in Henry Red Eagle.

Section 4 of the Act of Congress of March 2, 1929 (45 Stat. 1478), referred to by defendants in error, does not pretend to confer restrictions upon any of the land of the Osage Indians It has reference only to the payment of money by the Secretary to administrators and executors to be applied in payment of the debts of a member of that tribe. Neither is the trend of the legislation sufficient to impose restrictions upon the land in controversy in Henry Red Eagle, as insisted by defendants in error.

A more serious question is, Did the land in controversy, being conveyed to Margaret Hickey by the approved will of Henry Red Eagle, pass to her a restricted title? If so, did it pass subject to the lien of the judgment of plaintiffs in error?

The act of Congress with reference to the approval of wills is section 8 of the 1912 Act, supra (37 Stat. 88), which reads:

"That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will in accord-ance with the laws of the state of Oklahoma: provided, that no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

This section has reference to restricted estates. The language of the act is: "* * * from which restrictions as to alienation have not been removed." It is clear that this qualification applies to the language "estate," as well as to the trust funds.

The land in controversy, being unrestricted, did not require the approval of the Secretary to convey it by will. There was no law authorizing the approval of the conveyance of such land by will, and his approval of the will, so far as the land involved here was concerned, had no effect; and, therefore, this section does not apply to the conveyance of lands upon which there are no restrictions. There were no restrictions upon the land in controversy of Henry Red Eagle.

In the La Motte Case, supra, the Supreme Court further stated in that opinion:

"Many members (referring to Osage Indians) who are without certificates of competency have incomes and property which they are free to deal with as they choose. Some have purchased from white men having full title and an undoubted right to sell. See Levindale Lead & Zinc Min. Co. v. Coleman, 241 U. S. 432, 60 L. Ed. 1080, 36 Sup. Ct. Rep. 644."

Here the learned writer of that opinion was speaking of the very question involved and of the identical Indian tribe, construing acts of Congress, and of the fact that many Osage Indians had lands that were not restricted that these acts of Congress restricting lands did not reach, and that they had the right of their own free will to sell and to dispose of as they chose.

If Henry Red Eagle owned this land in controversy unrestricted, he had a right to convey it by sale, and if by sale, he certainly had a right to convey it by will without the approval of the Secretary of the Interior.

But, conceding for the sake of argument that the land passed restricted to Margaret Hickey, did it not pass to her with the lien of the judgment of the plaintiffs in error upon it? The judgment was obtained in 1924. Section 3 of the 1925 Act, upon which it is contended that the land passed to Margaret Hickey restricted, was not passed until after the judgment was obtained, and therefore that act, if it included unre-

stricted land, did not strike down the lien of that judgment.

Mr. Murphy in his brief cites section 6 of the 1925 Act, supra, which reads:

"No contract for debt hereafter made with a member of the Osage Tribe of Indians not having a certificate of competency, shall have any validity, unless approved by the Secretary of the Interior."

This act specifically applies to future transactions and does not attempt to restrict or require the approval of the Secretary of contracts prior to the date of the act; and the act being passed after the note in controversy was executed, and after the judgment was obtained upon the note, they are not affected by that act. Congress saw fit to limit the above language of section 6 specifically to contracts for debts, which required the approval of the Secretary, and a will is not a contract for debt. Therefore, it is plain from this language that it is not broad enough to reach a conveyance by will.

The judgment was kept alive by the issuing of executions until the application was made to the county court of Osage county to have the land sold to pay the debts of the deceased; and, therefore, if it did go to Margaret Hickey restricted, it went subject to the lien of the judgment of the plaintiffs in error.

This court is of the opinion, however, that the land passed to her unrestricted and also with the lien of the judgment upon it.

Second question: Were plaintiffs in error, by presenting their claim to the superintendent and Secretary, estopped from maintaining the proceeding herein?

The claim in controversy was presented to the superintendent and to the Secretary under the provisions of one or of both of the following acts of Congress:

Section 2 of the Act of Congress of February 27, 1925, supra, first provides that funds of restricted Osage Indians of one-half or more Osage Indian blood, inherited by or bequeathed to them, accruing to their credit, which are subject to supervision of the Secretary, may be paid to administrators or direct to the heirs or devisees in the discretion of the Secretary; then reads:

"The Secretary of the Interior shall pay to administrators and executors of estates of such deceased Osage Indians a sufficient amount of money out of said estates to pay all lawful indebtedness and costs and expenses of administration, when approved by him."

And then provides for paying out of the shares of the heirs and devisees costs and expenses in the determination of heirs and contests of wills.

Section 6 of Act of Congress of March 2, 1929 (45 Stat. L. 1478), reads:

"Sec. 6. All just existing obligations of restricted Osage Indians outstanding January 1, 1929, when approved by the superintendent of the Osage agency, shall be paid out of the money of such Indian appearing to his credit, in addition to his quarterly allowances; And provided further, That nothing herein contained shall be construed to interfere in any way with the granting of a certificate of competency by the Secretary of the Interior, as provided for by existing law, at any time after the payment of all of his or her just debts which have been presented to and approved by the superintendent of the Osage Indian agency."

In section 2, supra, the Secretary approves payment of the debts, pays them to the executor or administrator, and the indebtedness must be lawful. Therefore, this section appears to apply to estates of deceased Indians only.

In section 6, supra, the superintendent approves the payment of all obligations, of restricted Indians, outstanding January 1, 1929, and the inference is, to his creditors and that the obligation must be just. This section appears to apply to both estates and living Indians, but the obligations to be paid are limited to those outstanding January 1, 1929.

Section 1 of the Act of 1925, supra, provides for payment of substantial sums quarterly to members of the Osage Indian Tribe, sufficient to liberally take care of all their living expenses, debts and obligations.

The purpose of sections 2 and 6, supra, was to pay the legal and just debts of Osage Indians and of their estates out of the restricted funds of such Indians held in trust by the government under the supervision of the Secretary and superintendent.

It is a matter of general knowledge that many persons dealing with Indians overreach them and often they are defrauded, and much legislation has been passed for their protection. It is also a well-known fact that many Indians were indifferent to their obligations, and, although having plenty of means, they made bad bargains or squandered their money instead of pay-

ing their just obligations, even for supplies for the support of themselves and their families. These conditions, no doubt, induced the above quoted legislation for the purpose of paying the just and lawful obligations out of the Indian's restricted funds.

It was the duty of the Secretary and superintendent, so far as they reasonably could do so, to prevent the application of these trust funds in payment of illegal or unjust obligations, but it was not their duty under this law to arbitrarily cut down legal and just obligations, nor to refuse to pay them in full when there were ample trust funds with which to pay the same in their custody and under their control.

Surely Congress, by these acts, did not intend to constitute the Secretary or superintendent a court of review of the judgments of the courts of the state.

Whether or not these officers could be mandamused to pay a legal and just claim, as suggested by defendants in error, is not before this court; and whether or not the Secretary would have the right, on the application of the executor to him for payment of the claim, the judgment, to reduce the amount thereof and bind the plaintiffs in error thereby without their consent, the view we take of this case, is not necessary to decide.

The claim involved here was a judgment of the district court of Osage county. It was presented to the executor of Red Eagle's estate and to the county judge, each of whom approved it. Is it legal? Is it just? There is not a suggestion in this whole record that it is illegal or unjust. No defense was presented in the district court, no protest to its allowance or effort made to have it disallowed in the county court; no equities in favor of Red Eagle, or his estate, against it as a reason for its reduction suggested by the superintendent or the attorney for the Osages, or anyone else, in the county or district court.

The claim, the judgment, in controversy was first presented by the plaintiffs in error against Paul Red Eagle to the superintendent and a hearing had thereon, but before the claim was determined by him or the Secretary, Henry Red Eagle died, and after the claim was proven and allowed against his estate, the claim then by the executor of his estate was presented to the Secretary. The record does not show that any hearing was had before the Secretary. Apparently he allowed the claim upon the recommendation of the superintendent. How-

ever, the superintendent recommended the allowance of a greater sum than $3,000, the amount not shown, and the Secretary cut the amount recommended by the superintendent to $3,000, and that was paid to the executor and by him paid to the plaintiffs in error.

There is some testimony that the $3,000 paid was on the principal, that being the amount of the principal found due on the note by the district court in the judgment of that court, and it is insisted by the defendants in error in this court that the $3,000 was the principal of the debt. The only thing that appears in the record from which either the witness or defendants in error drew that conclusion is the fact that the $3,000 paid was the principal of the judgment debt; and that may have been the conclusion of the Secretary, that he decided to pay the principal out of the restricted funds of Henry Red Eagle, but not the interest, attorney's fees, and costs.

If the judgment for the principal sum of the debt was valid, just, and equitable, certainly no reason can be assigned why the interest, attorney's fees, and costs were not equally as valid, just, and equitable. There is no evidence in this case as to what happened or what evidence was introduced before the superintendent or submitted to the Secretary. There is not a suggestion that an issue was raised before either that any part of this judgment should be disallowed. Apparently the only question that was before them was whether or not any part of this judgment should be paid out of the restricted funds, first, of Paul Red Eagle, upon the approval of the superintendent, and, later, out of Henry Red Eagle's estate upon the approval of the Secretary. If an issue had been raised before either the superintendent or the Secretary as to the validity or justness of this claim and that issue had been considered by them in determining what amount would be allowed, and both parties had appeared to contest the issue, or if the claim had been presented with the agreement or understanding that whatever was allowed to be paid out of the restricted funds of Henry Red Eagle should be in full settlement of the claim of plaintiffs in error, a different question would be presented.

The superintendent, by his counsel, states in his brief that plaintiffs in error permitted the matter to be submitted to the Secretary of the Interior in due course without advising him in advance that they proposed the sale of the lands of the deceased for any balance not paid in cash. No occasion is

presented by the testimony in this case that required the giving of that information.

It appears affirmatively that neither the Secretary nor superintendent requested a receipt in full of the claim of plaintiffs in error, or that the judgment be satisfied of record. On the contrary, it affirmatively appears that when the money was paid to the attorney for the plaintiffs in error by the executor he requested a receipt for the amount paid and a statement as to the balance due, which was given to the executor in the nature of a letter, acknowledging payment of $3,000 as part satisfaction of the judgment, as set out in the statement of facts, supra.

If the payment of the $3,000 had been intended by the superintendent or Secretary to be in full satisfaction of the claim, certainly there would have been some positive evidence of that fact offered by the defendants in error at the trial; and, there being no such evidence, the conclusion necessarily follows from the other evidence in this case that the payment was not intended in full satisfaction of the judgment, and that the allowance by the Secretary of the $3,000 was an arbitrary allowance of that sum to be paid out of the restricted funds of Henry Red Eagle, and does not constitute an estoppel. Spencer v. First Nat. Bank, 116 Okla. 178, 243 P. 943; Tulsa Opera House Co. v. Mitchell, 165 Okla. 61, 24 P. (2d) 997.

Estoppel is an affirmative defense and must be pleaded. Clem Oil Co. v. Oliver, 106 Okla. 22, 232 P. 942, and cases therein cited.

The court is of the opinion that the land in controversy is subject to the payment of the claim of plaintiffs in error, and that they are not estopped from proceeding in a method provided by law to collect the balance of their claim against the land in controversy; and the decision of the trial court will be reversed and remanded for further proceedings not inconsistent with this opinion.

The Supreme Court acknowledges the aid of Attorneys James S. Arnote, Chas. R. Freeman, and Chas. H. Hudson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Arnote and approved by Mr. Freeman and Mr. Hudson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.