Fannie DONELSON and C. E. Donelson, Plaintiffs in Error,

v.

Frances OLDFIELD, Defendant in Error.

No. 43843.

Supreme Court of Oklahoma.

Sept. 21, 1971.

Robert P. Kelly, Bruce W. Gambill, Pawhuska, for plaintiffs in error.

Hamilton, Kane & Kane, Pawhuska, for defendant in error.

JACKSON, Justice.

The question presented in this appeal from the judgment of the District Court of Osage County, in which the facts are uncontradicted, is whether Section 3 of the Act of Congress of February 27, 1925, 43 Stat. 1008, had the effect of imposing restraints upon the alienation of lands in the hands of Osage Indian devisees, which lands had been free and clear of all restraints in the hands of the Osage Indian devisor. That section of the statute is as follows:

> "Lands devised to members of the Osage Tribe of one-half or more Indian blood or who do not have certificates of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior. Property of Osage Indians not having certificates of competency purchased as hereinabove set forth shall not be subject to the lien of any debt, claim, or judgment except taxes, or be subject to alienation, without the approval of the Secretary of the Interior."

We shall be concerned in this opinion principally with the first sentence above. The language in the second sentence concerning property "purchased as hereinabove set forth" is an obvious reference to provisions of Section 1 of the same act authorizing the Secretary, under specified conditions, to purchase lands *for* the Indian with restricted funds in his possession.

A later act of Congress (March 2, 1929, 45 Stat. 1478) had the effect of making the above restrictions, and all other existing restrictions upon Osage Indian lands, applicable to all unallotted Osages born since July 1, 1907. Since there is no issue in this case as to the degree of Osage Indian blood or certificates of competency, our further discussion of the case will be without reference to those factors, unless the context requires.

This appeal is from the judgment in a partition action between the two devisees, a daughter and a daughter in law of the testator. The trial court held, contrary to the contentions of the daughter in law, that the lands concerned were unrestricted and could be partitioned without the approval of the Secretary of the Interior. The daughter in law then appealed to this court.

The testator in this case purchased the lands involved with his own unrestricted funds. It is agreed that in his hands, the lands were free of all restrictions. The daughter in law, as plaintiff in error, argues that under the plain terms of the quoted statute, they are restricted in the hands of the devisees, since as to them they are clearly "Lands devised * * *" under a will approved by the Secretary. She relies principally upon United States v. Howard, 8 F.Supp. 617, a judgment of the United States District Court for the Northern District of Oklahoma.

An understanding of the arguments presented requires a brief review of the development of Osage Indian land law.

Under the original Osage Allotment Act (Act of Congress of June 28, 1906, 34 Stat. 539), the surface and surface rights of Osage lands were distributed to the members of the tribe in severalty, with the mineral rights reserved to the tribe as a whole, and alienation of the lands by Osages

without certificates of competency was prohibited. Under later acts of Congress (March 3, 1909, 35 Stat. 778; April 18, 1912, 37 Stat. 86; May 25, 1918, 40 Stat. 561) alienation was permitted under specified conditions subject to the approval of the Secretary. The 1912 act for the first time authorized Osages, with the approval of the Secretary, to dispose of their restricted lands by will. Early in 1921, in La Motte v. United States, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410, the United States Supreme Court held, among other things, that restricted Osage lands descending under a will approved by the Secretary were free of all restrictions upon alienation in the hands of the devisees, even if the devisees were themselves restricted Osages, and that under existing law there was no provision for the reimposition of restrictions that had once been removed. The court also held in effect that restrictions upon alienation were applicable only to lands allotted to a member or inherited by him from another member in whose hands they were restricted, and that there were no restrictions upon lands purchased by a member with his own unrestricted funds. On the general subject of the development of Osage Indian land law, see Semple, Oklahoma Indian Land Titles, Part II, from which much of the information above summarized is taken.

Apparently because of the decision in the La Motte case, and in order to effect other changes in the existing law, Congress adopted the Act of February 27, 1925, including the section quoted in the first paragraph of this opinion.

In U. S. v. Howard, supra, the lands involved were a part of the original allotment of an Osage allottee who died intestate in 1911, and they were inherited, as restricted lands, by his own two Osage daughters. In a later partition action the lands were divided between the two daughters and the order of confirmation and sheriff's deeds were approved by the Secretary in 1922. Under existing law and the decision in the La Motte case, the approved partition proceedings had the effect of freeing the lands of all restrictions in the hands of the two daughters. In 1931 they executed conveyances which were not approved by the Secretary, and the question presented in the Howard case was whether the restrictions upon alienation which were removed by the approved partition proceedings in 1922 were reimposed by the quoted provisions of the 1925 act.

In deciding that restrictions were reimposed, the federal court used language which, if not objectionable as dictum, is broad enough to cover the situation now before us. After quoting from and discussing a report of the Committee on Indian Affairs to Congress while the 1925 act was pending before that body, the court said:

"* * * it clearly evidences an intention by Congress to reimpose restrictions upon *all lands* belonging to incompetent allottees, *without respect to the manner in which such lands were acquired*" (emphasis supplied).

However, from other language appearing in the opinion, it may be doubted that such broad and sweeping construction was intended. In the same paragraph the court said "It clearly appears that lands devised * * * and lands inherited * * * were inalienable". In still another sentence in the same paragraph the court said "The purpose of the act plainly appears from the language employed in it; it undertook to reimpose restrictions upon all property whether *inherited by or purchased for* incompetent members of the tribe" (emphasis supplied). In these sentences, it would seem that the court limited its holding to lands of three classes: (1) lands devised under an approved will; (2) lands inherited and (3) lands purchased *for* the Indian by the Secretary with restricted funds in his possession. The lands involved in the case now before us are clearly not within either of the last two classes.

The issue before us is thus narrowed to the question of whether the lands involved herein are within the first class above—

"Lands devised * * * under wills approved by the Secretary" within the meaning of Section 3 of the 1925 act.

The gist of the holding in the Howard case was that the approved partition proceedings in 1922, which concededly freed the lands of all restrictions at that time, did not deprive the lands of their character as "lands inherited" within the meaning of the 1925 act. There was no question in the Howard case but that (1) the lands involved were restricted in the hands of the intestate father; (2) they continued to be restricted in the hands of the two daughters who inherited them in 1911; and (3) restrictions were removed under applicable law by the approved partition proceedings in 1922. Of course the facts are different in the instant case.

In the answer brief in the case now before us, the daughter argues that as to the lands here concerned, which were unrestricted in the devisor's hands, the Secretary's approval of the devisor's will was not required by law, citing Cox v. Smith, 171 Okl. 567, 43 P.2d 439, and that such approval was obtained in this case only because the will also disposed of the devisor's headright interest in the Osage mineral rights still held in common as restricted property. She concludes that since this land could have been legally devised without the approval of the Secretary if the devisor had not also owned restricted property, it should be treated, in law, as lands devised without such approval.

We think there is merit in this argument. We cannot believe it was the intention of Congress that the question of whether lands unrestricted in the devisor's hands should be restricted in the hands of the devisees should depend upon the purely extraneous circumstances of whether the devisor also happened to own restricted property as to which the Secretary's approval of his will would be required. We see no relation between the question of whether the *devisor* happened to own both restricted and unrestricted property, and the question of whether the *devisees* are competent to manage their own lands and affairs.

■ It is arguable, of course, that the language of Section 3 of the 1925 act, quoted in the first paragraph of this opinion, is clear and unambiguous and therefore does not require interpretation. It is equally well settled, however, that a legislative act should be construed as a whole. We find language in the 1925 act, *as amended by the 1929 act*, which tends to support the suggested construction.

Section 2 of the 1925 act originally dealt only with restricted funds of Osage Indians. It was amended by the 1929 act to include, among other language, the following:

"* * * Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds *and other property* accrued and accruing to his credit *shall be paid and delivered to the administrator or executor* of his estate to be administered upon according to the laws of the State of Oklahoma: Provided, That upon the settlement of such estate any funds or property *subject to the control or supervision of the Secretary of the Interior* on the date of the approval of this Act, *which have been inherited by or devised to any adult or minor heir or devisee* of one-half or more Osage Indian blood who does not have a certificate of competency, *and which have been paid or delivered by the Secretary of the Interior to the administrator or executor* shall be paid or delivered by such administrator or executor to the Secretary of the Interior for the benefit of such Indian and *shall be subject to the supervision of the Secretary as provided by law*." (Emphasis supplied.)

Since the above sentence refers to "other property" and uses the terms "devised" and "devisee", it applies to real as well as personal property. R. L. Donelson, the devisor in this case, was an Osage of less

than one-half Osage blood and had a certificate of competency, and was therefore within the terms of this sentence. Under the introductory clause, the Secretary was required to turn over to the executor all of Donelson's funds or property for purposes of administration under Oklahoma law. Under the proviso, in case any of Donelson's estate had been "inherited by or devised to" a restricted Osage Indian, the executor was required to return to the Secretary only those portions of the inherited or devised property "which have been paid or delivered by the Secretary to the administrator or executor" in the first place, to be "subject to supervision" as provided by law.

Under the undisputed facts in this case, the lands sought to be partitioned were unrestricted in Donelson's hands and therefore were not "subject to the control or supervision of the Secretary"; they were not "paid or delivered" to the executor of Donelson's estate at his death; and, upon settlement of the estate, the executor was not required to "pay or deliver" them to the Secretary for the benefit of any restricted Osage devisee, to be "subject to supervision" as provided by law.

Under the language of the 1929 amendment Congress clearly made a distinction between the restricted and unrestricted property of an Osage devisor, and provided in effect that the unrestricted property of the devisor should not be "subject to supervision" in the hands of a restricted Osage devisee. We find it significant that this sentence comes immediately ahead of that part of the 1929 act (Section 5) which extended existing restrictions to unallotted Osages born since July 1, 1907.

We think the 1929 amendment of the 1925 act, and the section of the 1925 act quoted in the first paragraph of this opinion, must be construed together. The 1929 amendment is meaningless unless Section 3 of the 1925 act is construed as suggested by the daughter.

We therefore hold that land unrestricted in the hands of an Osage Indian devisor, as to which the Secretary's approval of his will is not required by law, remains unrestricted in the hands of Osage Indian devisees, despite the fact that his will was in fact approved by the Secretary because it also disposed of restricted property.

Under this construction of the 1925 act as amended by the 1929 act, there is no conflict between the Howard case, decided by the federal court, and Cox v. Smith, supra, decided a few months later by this court, when the respective holdings are confined to the facts presented. The Howard case dealt with lands restricted in the hands of the intestate Osage ancestor. This case deals with lands unrestricted in the hands of the Osage devisor.

The judgment of the trial court is affirmed.

All the Justices concur.