UNITED STATES v. LA MOTTE et al. (two cases).

Nos. 842, 844.

Circuit Court of Appeals, Tenth Circuit.

Nov. 29, 1933.

A. E. Williams, Asst. U. S. Dist. Atty., of Tulsa, Okl. (Jno. M. Goldesberry, U. S. Dist. Atty., of Tulsa, Okl., on the brief), for the United States.

E. H. Mattingly, of Pawhuska, Okl., and John Rogers, of Tulsa, Okl. (Holcombe, Lohman & Barney and Frank T. McCoy, all of Pawhuska, Okl., Joe Shidler, of Tulsa, Okl., and Sands & Campbell and Leahy, MacDonald & Files, all of Pawhuska, Okl., on the brief), for appellees.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

These cases were argued together and they will be decided in like manner. The land, title to which is involved in the first case, was allotted to the heirs of Che-she-hun-kah, a restricted Osage Indian. Che-she-hun-kah died intestate in 1907. His wife died intestate in 1909. The sole heirs of these spouses were their two sons, George W. Allen and John Claremore. A certificate of competency was issued to John Claremore in 1910. He thereafter executed two deeds, each conveying an undivided one-half interest of his interest in the land, the first to H. G. Burt and the other to George W. Allen. The latter conveyance contained a restrictive clause and was approved by the Secretary of the Interior. Burt subsequently conveyed his interest to George W. Allen. Allen acquired the entire estate in that manner. The land involved in the second case was allotted to Allen in 1909. He died intestate in 1914, leaving as his sole heirs his wife, Rose Allen, and his son, George Allen, then about eleven months of age. The infant son died later in the year 1914 at the approximate age of eighteen months.

Rose Allen executed a warranty deed, dated August 26, 1915, conveying to George G. La Motte and Anna Marx La Motte the interest in the land which she inherited from her deceased son. This suit, to cancel that and subsequent conveyances made upon the strength of it, was instituted at the request of the Secretary of the Interior. The court sustained the conveyances, and this appeal followed.

The first question presented is whether George Allen was a member of the Osage Tribe. His parents were members. The act approved June 28, 1906 (34 Stat. 539), provides: "The roll of the Osage tribe of Indians, as shown by the records of the United States in the office of the United States Indian agent at the Osage Agency, Oklahoma Territory, as it existed on the first day of January, nineteen hundred and six, and all children born between January first, nineteen hundred and six, and July first, nineteen hundred and seven, to persons whose names are on said roll on January first, nineteen hundred and six, and all children whose names are not now on said roll, but who were born to members of the tribe whose names were on the said roll on January first, nineteen hundred and six, including the children of members of the tribe who have, or have had, white husbands, is hereby declared to be the roll of said tribe and to constitute the legal membership thereof."

Appellant argues that the statute relates exclusively to the official roll of the tribe; that it prescribes the names which shall constitute such roll; that it provides the names which shall constitute membership of the roll, not membership of the tribe. In other words, it is urged that young Allen was a member of the tribe but not a member of the roll for allotment purposes. Congress clearly undertook to provide membership in the tribe in order that consequent rights could be determined therefrom. Merely fixing a roll and declaring who should be members of it, not members of the tribe, would be legislative fiction. We do not think Congress willed to do that. Keeping the obvious purpose of the act in mind and without indulging in technical grammatical refinements concerning the antecedent to which the language of the statute, "and to constitute the legal membership thereof," refers, it is obvious that Congress intended to provide that the names of those specified in the act should constitute the official roll of the tribe and that such persons should constitute the membership of the tribe. Since George Allen was born subsequent to July 1, 1907, he was not a member of the tribe for allotment purposes. Not being such member, no restriction existed upon his right to alienate the interest in the land inherited from his father unless, under the law then in force, the restriction imposed upon the original allottee followed the land into the hands of a nonrestricted Osage. The pertinent part of section 6 of the act approved April 18, 1912 (37 Stat. 86), provides: "When the heirs of such deceased al-

790

lottees have certificates of competency or are not members of the tribe, the restrictions on alienation are hereby removed."

The statute is clear and unambiguous, and it was in force at all times material hereto. It removed the restrictions on alienation upon heirs of a deceased allottee having certificates of competency and upon those not members of the tribe. The Act approved March 2, 1929 (45 Stat. 1478), imposed restrictions upon heirs not members of the tribe, but it became effective long after the transactions involved here took place. Its only effect therefore is to constitute a legislative interpretation that such restrictions did not exist theretofore.

It is conceded by the parties that from 1914 the Department of the Interior construed the statute of 1912 to remove the restrictions of alienation upon children of Osages born subsequent to July 1st, 1907. While the construction accorded a statute by the Executive Department charged with its administration is not binding, it will be respected if the question is doubtful or is one of ambiguity, and it will not be disturbed unless it is clearly wrong. United States v. Jackson, 280 U. S. 183, 50 S. Ct. 143, 74 L. Ed. 361; Taylor v. Tayrien (C. C. A. 10) 51 F.(2d) 884. So, if the question were a debatable one, we would accord great weight to the long construction given the statute by the department charged with its administration; but apart from that consideration the interpretation was correct. The act clearly removed the restrictions on alienation upon children born after July 1, 1907. Such restrictions could be reimposed only by statute. Neither the act of 1906, nor that of 1912 reimposed them, although the land again became the property of a restricted Indian. La Motte v. United States, 254 U. S. 570, 41 S. Ct. 204, 65 L. Ed. 410.

The judgment is affirmed.