FRANKLIN LIFE INS. CO. v. UNITED STATES.

No. 45045.

Court of Claims.

March 3, 1941.

Writ of Certiorari Denied May 26, 1941.

See 61 S.Ct. 1096, 85 L.Ed. ——.

"_____

Warren W. Grimes, of Washington, D. C., for plaintiff.

H. L. Will, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and WHITAKER, LITTLETON, and GREEN, Judges.

GREEN, Judge.

The plaintiff was required by the Commissioner of Internal Revenue to pay stamp taxes on securities deposited by it with the Director of Insurance for the State of Illinois. It claims the taxes were unlawfully exacted and seeks to have them refunded.

The plaintiff is an insurance corporation organized under the laws of the State of Illinois with its principal place of business in the City of Springfield. Under the laws of that state during the period involved in this case any life-insurance company incorporated in Illinois might elect to deposit securities with the Director of Trade and Commerce (Director of Insurance) equal to the statutory reserve on a certain group of policies to be designated as registered policies. Such policies were then stamped by the Director of Insurance and the following legend placed thereon: "This policy is registered; and approved securities, equal in value to the legal reserve hereon, are held in trust by this department."

While the securities were legally transferred to him, the Director of Insurance was not authorized to dispose of the deposited securities except to exchange them with the depositing company for others of equal or greater value. Upon insolvency of the insurance company, however, or failure to maintain its deposits as required, the insurance act provides a special procedure under which, after appropriate court order, the Director of Insurance appoints a receiver who operates the company for the benefit of the policyholders. The depositing insurance company, on the other hand, could not withdraw the bonds without substituting ones of equal value and quality.

The plaintiff elected to issue registered policies and from time to time has both deposited with and withdrawn securities from the Director of Insurance under the Illinois statute. Unregistered bonds were merely deposited in trust with the Director and the following legend was stamped across the face of each: "This (bond) is the property of and deposited by The Franklin Life Insurance Company, of Springfield, Illinois, with the Director of Insurance of the State of Illinois, and held by him in trust for the benefit and security of the members, policyholders, or creditors of the said The Franklin Life Insurance Company, as required by and pursuant to the laws of the State of Illinois. It is not negotiable or transferable until withdrawn from said trust, at which time it shall be endorsed by the Director of Insurance."

On October 2, 1939, the collector of internal revenue at Springfield, Illinois, required the plaintiff to purchase documentary stamps to cover bond deposits and withdrawals from January 14, 1936, through August 8, 1939. These deposits totalled $5,443,000 and the withdrawals $1,162,000, the stamps thereon amounting to $2,177.20 and $564.80, respectively, or a total of $2,742. Plaintiff filed a claim for refund of the $2,742 on November 3, 1939, which was rejected by a letter of the Commissioner of Internal Revenue dated November 20, 1939.

The first question to be determined is whether the transactions involved are subject to the Federal stamp tax.

The statute provides, Schedule A(9) of Title VIII of the Revenue Act of 1926, as added by Section 724(a) of the Revenue Act of 1932, that the tax shall be imposed upon "all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the instruments mentioned or described in subdivision 1 and of a kind the issue of which is taxable thereunder, whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such instrument or not), * * *."

This statute has been uniformly construed by the Bureau of Internal Revenue to impose a tax on the mere physical de-

livery of a described security unless such delivery is expressly exempted from the tax, for example, delivery to or by a broker in the course of a sale.

The contention of the plaintiff that the statute does not apply to transfers of bonds under section 241 of the Insurance Laws of the State of Illinois is largely based on the fact that no beneficial interest was acquired in the transaction by the Director of Insurance. Plaintiff concedes that the legal title to the bonds was by the transfer conveyed to the Director. Indeed, the Illinois statute provides (1899 act, section 240) that the securities "shall be legally transferred * * * to him" and "shall be held by him in trust." It is true that the transaction did not involve the transfer of a beneficial interest but in the case of Founders General Corp. v. Hoey, 300 U.S. 268, 274, 57 S.Ct. 457, 460, 81 L. Ed. 639, it was said "that fact is, in view of the language of the act, without legal significance." In the case before us the taxpayer transferred the legal title to the security and thereby gave the Director of Insurance the right to hold it under certain conditions. The transfer of the legal title was expressly made subject to the tax by the revenue act and we think the case cited above is decisive against plaintiff's contention that the statute does not cover the transaction in question.

Plaintiff also urges that if the transfers in question are included in the provisions of the Federal stamp tax statute the tax is unconstitutional as imposing a direct burden upon the exercise by a state of its governmental functions.

In order to sustain this contention two matters must be established. The first is that it must appear that the permissive registration of insurance policies is an essential governmental function exercised pursuant to the police power of the state. The second is that the tax imposes a direct burden on the exercise of that function. A difficult and somewhat doubtful question is thus raised, but on the whole we think the statute is constitutional.

Upon examination of the registration provisions we find that they relate only to companies incorporated in Illinois, although foreign companies are authorized to do business in the state and actually do issue a very large proportion of the life insurance policies sold there. The registration provisions apply to all policies issued by Illinois companies whether to citizens within or outside the state. Much less than half of the insurance in force by Illinois companies has been issued to residents of that state. Plaintiff argues that the registration provisions of the Illinois statute were enacted to protect the residents of the state. It would seem rather that the purpose was to give Illinois insurance companies an opportunity to hold out some special advantage to those who were considering taking out the life insurance policies. But we think these facts are not controlling in the case.

A special feature of the registry act was that it was optional with the insurance companies whether or not they so registered policies. It was the insurance company and not the state that decided what should be done. Section 240 provides that a domestic corporation "may deposit" securities with the insurance superintendent for the purpose of issuing registered policies. The only mandatory provision of the act is that after electing to issue registered policies the company must continue to issue only such policies until the insurance in force exceeds $20,000,000, after which it may discontinue registration. It should also be observed that the registration statute did not increase the amount of legal reserves required but merely provided that a special method might be used in taking charge of such reserves.

The case of Helvering v. Gerhardt, 304 U.S. 405, 419, 420, 58 S.Ct. 969, 974, 82 L.Ed. 1427, contains an elaborate discussion of the constitutional question of state immunity to taxation, and while it does not directly decide the question now presented we think a logical conclusion from the rules laid down in the opinion will not sustain the plaintiff's position. It is quite evident from what is said therein that the mere fact that the tax affects some form of state activity "or [is one] whose economic burden reaches in some measure the state or those who serve it" will not cause the tax "to be set aside as an infringement of state sovereignty" (304 U. S. at page 417, 58 S.Ct. at page 974, 82 L. Ed. 1427), and it is shown that the immunity of the state is more narrowly restricted in those cases where the tax is not collected from a state treasury but from individual taxpayers (304 U.S. at page 418, 58 S.Ct. 969, 82 L.Ed. 1427) even though the state itself might be held immune. It is further said (304 U.S. at page 419, 58 S.Ct. at page 975, 82 L.Ed. 1427)

that there are "two guiding principles of limitation for holding the tax immunity of state instrumentalities to its proper function." One excludes from the immunity "activities thought not to be essential to the preservation of state governments even though the tax be collected from the state treasury," as it was not in the case before us. The other principle is "exemplified by those cases where the tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer" and forbids the immunity when the burden on the state is speculative and uncertain. In the instant case the tax was not passed on to the state. Still further it is said (304 U.S. at page 421, 58 S.Ct. at page 976, 82 L.Ed. 1427): "When immunity is claimed from a tax laid on private persons, it must clearly appear that the burden upon the state function is actual and substantial, not conjectural." In the instant case the tax is levied upon private persons, and it is difficult to see how any state function is burdened.

While none of the rules laid down above was applied to a state of affairs exactly similar to that in the case before us, we think a logical conclusion from the principles laid down by the Supreme Court would exclude plaintiff from the immunity that it seeks to have established.

We need not discuss whether the action of the state involved in the instant case was beneficial to its citizens as we think it is well settled that the mere fact that some benefit is conferred by the state law does not make acts done by another party in connection therewith immune from taxation, or even the acts of the state itself. The argument of plaintiff assumes that the taxation on the transfer of securities by insurance companies in some way burdened or hindered the state in the exercise of its police powers. We do not think this appears from the facts in the case.

There is no doubt that any state of the Union has the right under its police powers to regulate and control the issuance of insurance policies in such a manner as to protect the interests of the policyholders. But in this case, we do not think the statute exercised either regulation or control. It was the insurance company which under the statute determined whether it would or would not register its policies and comply with the provisions of the law.

The state exercised no control whatever over the securities deposited until after the insurance company had elected to accept the provisions of the law and proceed under it.

What the state did, as it seems to us, was to grant to the insurance company the privilege of using the state as a depository for its securities for the payment of the policies issued. If the insurance company exercised this privilege it could be used as an inducement to take out policies in the company making the deposit by reason of the greater security provided. Altogether it seems that the plan was devised rather in the interest of home insurance companies than of the public. But be this as it may, we think the statutory provisions should be taken as a whole and that when so regarded it is clear that they had no force unless put in motion by an insurance company. The tax may be said to have burdened in some slight degree the insurance companies which made use of the state as a depository for securities, but this was not a burden upon the right of the state to control the insurance companies or regulate them, for the statute did not require the insurance companies to make such a deposit. If this was the extent of the burden cast, the statute would not be unconstitutional.

The case of Ambrosini v. United States, 187 U.S. 1, 23 S.Ct. 1, 47 L.Ed. 49, which plaintiff contends is controlling in its favor, in our opinion has no application. In that case the State of Illinois was exercising its undoubted right under its police powers to regulate the sale of intoxicating liquors and in so doing required a bond to be filed by the applicant for a license to sell such liquors. The Government required a stamp to be placed upon the bond when filed. Unquestionably this placed a burden upon the lawful exercise of the police power of the state. The facts are quite different from those which appear in the instant case.

The rule is familiar that the courts should not declare a statute unconstitutional unless its unconstitutionality is free from doubt. This we cannot say, and therefore hold to the contrary of plaintiff's contention.

The plaintiff's petition must be dismissed, and it is so ordered.