**OCCIDENTAL LIFE INS. CO. v. ROGAN, Collector of Internal Revenue.**

No. 1891–BH.

District Court, S. D. California, Central Division.

Dec. 11, 1942.

George H. Koster, of San Francisco, Cal., and Powell E. Smith, of Los Angeles, Cal., for plaintiff.

Leo V. Silverstein, U. S. Atty., and Edward H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is an action to recover documentary stamp taxes in the amount of $3,372.52, exacted under provision of Sections 1800 to 1802 and Sections 3480 to 3483 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, §§ 1800–1802, and 3480–3483, and involves the question of whether an insurance company, that places securities with the insurance departments of the States of California, Idaho, Iowa, Washington and Wyoming, as a prerequisite to doing business in said states, is liable for stamp taxes on the securities so placed. This case comes to me upon a written stipulation of facts.

The stipulation of facts reveals that the plaintiff insurance company, in order to do business in the aforesaid states and in pursuance to the following statutes, namely: California Insurance Code, § 940, St.1935, p. 534; Iowa Code 1935, § 8663; Idaho Code Annotated 1932, § 40-610; Washington Remington Revised Statutes, § 7069; Wyoming Revised Statutes 1931, § 57-409 and Arizona Code Annotated 1939, § 61-327, placed with the Insurance Commissioner, or other similar State Insurance officials, certain stocks and bearer bonds for the benefit and protection of the Plaintiff's policyholders as a prerequisite to doing business in said states, thereafter withdrew and substituted other securities in place thereof. All voting rights of stocks were retained by the insurance company and the securities were only available to the policyholders in the event of the insolvency of the insurance company, which at all times collected the earnings from said securities. The plaintiff in its brief admits that for the purpose of this case, the state statutes involved are of similar import.

The defendant collector exacted documentary stamp taxes, not only on the original placement, but also upon substituted and withdrawn securities.

Counsel for the plaintiff contends: (1) That no transfer tax attaches unless a transfer of legal title is involved; and (2) that the transfer was by operation of law and therefore exempt from taxation.

Said Section 1802, in part, provides as follows: "Sales and transfers. On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), * * * Provided further, That it is not intended by this chapter to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, nor upon the delivery or transfer for such purpose of certificates so deposited nor upon the return of stock loaned".

Said Sections 3480 and 3481 cover similar transactions in bonds.

Plaintiff's first contention is that under the provisions of the various state statutes heretofore cited, the transfer conveys no legal title of said stocks and bonds pass to the Insurance Commissioner. For the purpose of brevity, I shall refer to the official charged with the responsibility of receiving and accepting said securities as "Insurance Commissioner", however, he may be designated by the said state statutes. Under such contention is a transfer of legal title necessary, and if so, did legal title pass?

While the Supreme Court has not directly passed upon the precise question herein involved, it has construed said Section 1802, and I feel that its construction of said section simplifies the problem herein immediately involved.

In Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 64, 80 L. Ed. 44, 102 A.L.R. 111, the court said: "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. See Provost v. United States, 269 U.S. 443, 458, 459, 46 S.Ct. 152, 70 L.Ed. 352. While the statute speaks of transfers, it does not require that the transfer shall be directly from the hand of the transferor to that of the transferee. *It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another.* Even the ownership of a share of stock, transfer of which is admittedly taxed, is not transferred directly from one to another as is title to a chattel or to real estate." (Italics supplied)

The court in Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 460, 81 L. Ed. 639, stated as follows:

"It is true that in none of the three cases did the transaction involve the transfer of a beneficial interest. But that fact is, in view of the language of the act, without legal significance. *The tax is exacted because the taxpayer transferred 'the right to receive' the certificate.* Likewise it is without legal significance that, under power of attorney from nominee to beneficial owner, the former may have no part in the management or disposal of the securities. Nor is it material that in no case did the nominee have a right, at least as against the taxpayer, to compel issuance of the stock to himself. The legal title to the shares was received by the nominee from the newly formed corporation; but the authorization rendering his holding lawful was received from the taxpayer. The legality of the issuance of the stock in the names of the nominees rests on the fact that the taxpayers authorized such issuance and granted their nominees the right to receive the stocks entered in their names. The grant of that authority is a transfer of 'the right to receive' within the meaning of the act; and we are not to look beyond the act for further criteria of taxability. See Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199.

"*The statute defines the scope of the tax in terms whose breadth is emphasized by the careful particularity of its provisos.*" Especially indicative of Congressional intention that nominee transactions generally should be subject to the tax are the provisos added by the Revenue Act of 1932, June 6, 1932, c. 209, § 723, 47 Stat. 273, * * * and the Act of June 29, 1936, c. 865, 49 Stat. 2029 [26 U.S.C.A. Int.Rev. Acts, page 630] which except certain specifically described transfers to nominees." (Italics supplied)

From the aforementioned expressions of the Supreme Court, it is clear that Section 1802 is clearly a revenue producing enactment. As was said by Judge Healy in his dissenting opinion in Corporation of America v. McLaughlin, 9 Cir., 100 F.2d 72, 81: "* * * The purpose of the act of Congress was not to define methods of transfer or disposition of corporate stock, but to produce revenue. The greater the number of transactions becoming subject to the tax the more nearly is the object of the statute achieved. * * *"

It was evidently the intention of Congress to tax all transactions not specifically exempted and that it "is not to be restricted by technical refinements". Founders General Corp. v. Hoey, supra. The Eighth Circuit in Becker v. Bank of Commerce Liquidating Co., 102 F.2d 633, 637, had this thought in mind when the court stated: "It is said by appellee that as between the trustees and the stockholders, the latter were entitled to receive the stock, because the former were trustees of a dry or passive trust. It is not shown how this fact, if it be true, matters under the statute; but it is true only in a limited sense."

Plaintiff insists that the transactions are pledges, and by reason thereof it is not liable. Of course, if the transactions herein involved could be construed as pledges for money loaned, plaintiff's position would be tenable, provided it complied with Article 35, Section (i), of Treasury Regulation 71, Revised, which reads as follows: "An agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, and the delivery or transfer for such purpose of the certificates so deposited; *but the person making a transfer of such certificates shall make and sign a statement of the facts and attach it to the certificate.*" (Italics supplied) But inasmuch as said Section 1802 exempts "a deposit of certificates as collateral se-

curity for money loaned thereon", in order for a pledge to be exempt, the security must have been given "for money loaned thereon" and under familiar rules of statutory construction a pledge for any other purpose than specifically specified in the statute would not be exempt. 25 R.C.L. § 229, p. 981 and cases therein cited.

Able counsel argues that transactions herein involved are in effect pledges and a pledge conveys no legal title, therefore no liability accrued. If such contention is tenable, then there was no occasion for Congress to provide for the exemption of pledges for money loaned as all pledges under counsel's theory would be exempt. In my opinion, the fact that Congress did so provide nullifies this contention of counsel and further tends to nullify counsel's theory that the tax only applied to transfers of legal title. This section was not loosely drawn, but was drawn as the result of a broad background of experience in this type of taxation. This "particularity of its provisos" was commented upon by Justice Brandeis in Founders General Corp. v. Hoey, supra.

Consequently, if Congress had intended to restrict said Section 1802 to transfers of legal title, then there was no occasion to exempt pledges for money loaned, as all pledges would have been exempt without Congressional aid.

This has been a recognized rule since the days of Chief Justice Marshall, when in the case of Brown v. State of Maryland, 12 Wheat. 419, 438, 25 U.S. 419, 6 L.Ed. 678–685, he said: "If it be a rule of interpretation to which all assent, that the exception of a particular thing from general words, proves that, in the opinion of the law-giver, the thing excepted would be within the general clause, had the exception not been made, we know no reason why this general rule should not be as applicable to the constitution as to other instruments." See, also, 25 R.C.L. 983; Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 131, 73 L. Ed. 379; Paso Robles Mercantile Co. v. Commissioner of Internal Revenue, 9 Cir., 33 F.2d 653.

■■ I have herein expressed my reasoning in support of the contention of the government that the passing of legal title is not a prerequisite to liability for the tax herein involved. If this were a case of first impression, I would hold that the transactions herein involved come within

that portion of said Section 1802 "or by any delivery", and that the delivery of the securities created a liability by the plaintiff for the payment of the tax involved. In this respect, I am in full accord with Hollister v. United States, D.C., 38 Fed. Supp. 7. However, my views must be submerged, as I am controlled by the recent opinion in the case of Orpheum Bldg. Co. v. Anglim, 9 Cir., 127 F.2d 478, wherein the court unequivocally held that the tax only applied on the transfer of legal title, consequently, I must now turn to the question of whether or not there was a passing of the legal title in the transactions involved in this litigation.

■ I am of the opinion that the legal title actually passed to the Insurance Commissioner. The insurance company delivered the securities for the protection of the policyholders in the event the insurance company should become insolvent. During the time the insurance company had outstanding policies, it could not draw down its securities without the substitution of other securities of equal value. The insurance Commissioner was in effect the trustee and the policyholders the beneficiaries. A trust was thereby created wherein the legal title passed to said Insurance Commissioner.

Section 940 of the Insurance Code of California provides in part as follows: "The commissioner shall accept and hold securities in trust for the policyholders of an insurer and for their benefit."

Iowa Code of 1935, § 8652, provides in part as follows: " * * * that he as such officer holds in trust and on deposit for the benefit of all the policyholders of such company, the securities above mentioned."

Section 40-610, Idaho Code Annotated 1932, provides in part: "The department shall furnish, under its official seal, to such company, a certificate certifying that it holds said securities in trust for the benefit of the policyholders of such company."

Washington Remington Revised Statutes, § 7069, provides in part that the securities, etc., "shall be held as security for the protection of all policy-holders".

Wyoming Revised Statutes 1931, § 57-409, in part provides: "The insurance commissioner shall furnish under his bond and official seal to such depositing company a certificate certifying that he holds said securities in trust for the benefit and pro-

tection of the policy holders of such depositing company."

Section 61-327 of the Annotated Code of Arizona 1939, provides in part as follows: "The treasurer of this state shall receive from any domestic insurance company to be held on deposit in trust for the protection of all the policy holders of such company the securities required to be deposited by the laws of any state."

The language of the above mentioned statutes indicates to me the intention of the various state legislatures to create trusts for the benefit of the policyholders.

Exhibit 1, attached to the stipulation of facts, reads as follows:

"For value received, we hereby sell, assign and transfer unto E. Forrest Mitchell, as Insurance Commissioner of the State of California, to be held in trust for the account of Occidental Life Insurance Company, under the provisions of Sec. 634 P.C. of California, 100 shares of the Capital Stock of the Fireman's Fund Insurance Company standing in our name on the books of said Fireman's Fund Insurance Company, represented by Certificate No. A-23881 herewith and do hereby irrevocably constitute and appoint said Insurance Commissioner attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises.

"Dated: October 6th, 1932
"Occidental Life Insurance Company
"(Signed) Robert J. Giles
        "Vice President
"(Signature Guaranteed)
"(Signed) N. O. Cleaver
        "Assistant Secretary
"In presence of:
"(Signed) W. S. Hosking"

Again under Exhibit 12 attached to the stipulation of facts, it will be noted that the Insurance Commissioner, in giving a receipt to the plaintiff for the securities therein described, used this pertinent language: "I have received from the Occidental Life Insurance Company with principal office located at Los Angeles, in the State of California, on deposit, and in trust for, and for the benefit of, the policyholders in the United States of said company, securities, etc. * * *."

It is hard to understand how, in the face of said Exhibits 1 and 12, plaintiff can maintain that it retained legal title to the said securities consisting of stocks and bonds. Of course, the voluntary delivery of bearer bonds would carry the legal title to such bonds, and by said Exhibits plaintiff indicates its intention to transfer the legal title to such securities.

■ The final contention of the plaintiff is that the transfers were wholly by operation of law and therefore exempt from taxation.

Counsel for plaintiff states: "this question is now in such a state of confusion that it is difficult to point out any pronounced principles or tests as a basis for determining whether a transfer is, or is not, wholly by operation of law".

Plaintiff's counsel cited Regulation 71, November 1941 Edition, Section 113.34 (a), which in effect exempts only those transactions, which take effect wholly by operation of law. Like in the case of United States v. Merchants National Trust & Savings Bank, 9 Cir., 101 F.2d 399 (Judge Denman's footnote), the Treasury's power to make this regulation is not in litigation.

There was no step taken by the plaintiff that did not represent a voluntary act on its part. It was optional with it whether it did business in the particular states hereinbefore mentioned. The exchange and placement of securities was a privilege the law extended to it, which it might or might not exercise. Carrying plaintiff's argument to its logical conclusion, it might well argue that its own stock, issued in pursuance to law under permit duly authorized, was consummated by operation of law, because it could only be issued in compliance with statutory law. Plaintiff acted pursuant to law, but its acts were not by operation of law. The stipulation of facts in this case clearly reveals that the entire transactions herein involved were at the instance and request of the plaintiff and voluntary on its part and were not wholly by operation of law.

Plaintiff in support of its theory cites Judge Denman in United States v. Merchants National Trust & Savings Bank, 9 Cir., 101 F.2d 399, 402. Judge Denman had before him a bank merger, wherein the state law involved provided for the transfer "ipso facto and by operation of law and without further transfer, substitution, act or deed". It is thus apparent that Judge Denman had not only a different factual situation before him, but entirely a different state statute under consideration.

Plaintiff's counsel has cited numerous other cases from different circuits, but none of said cases give any broader definition of "wholly by operation" than the words themselves imply. I do not believe that a transfer or delivery "pursuant to law" is the legal equivalent to "wholly by operation of law".

The only analogous case to the one now before the court is a Court of Claims case entitled Franklin Life Insurance Co. v. United States, 37 F.Supp. 155, 93 Ct.Cl. 259, certiorari denied 313 U.S. 580, 61 S.Ct. 1096, 85 L.Ed. 1537. The court denied plaintiff the sought refund of documentary stamp taxes exacted under somewhat similar facts as are involved in this litigation.

This court recognizes that in the Franklin case, supra, it was stipulated that the title to the deposited securities were transferred to the Director of Insurance under the Illinois statute, while in this case transfer of title is one of the issues raised by the plaintiff. Nor did said case involve the point that the transfer was by operation of law.

Be that as it may, each case presented the same ultimate issue for determination. In the Franklin case the court held against the taxpayer and in this case I hold against the taxpayer. Though we have traveled over different routes caused by the difference in the theories advanced, we have arrived at the same destination. In arriving at my conclusions in this case, I have endeavored to put into effect the words of Justice Stone in the case of Ray-bestos-Manhattan, Inc., v. United States, supra, when he said this act "is not to be restricted by technical refinements".

My attention has been called to Section 506 (b) (4) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts. Counsel for plaintiff contends that this amendment should be deemed as interpretative of the former law, which counsel for the government contends, that if such was the law under Section 1802 prior to the amendment, there was no occasion for said amendment. Either contention may be used effectively, depending on which side of the question one finds himself. The following authorities tend to support defendant's contention: Shamrock Oil Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L. Ed. 1214; Cotonificio Bustese, S. A. v. Morgenthau, 74 App.D.C. 13, 121 F.2d 884; Noteman v. Welch, 1 Cir., 108 F.2d 206; United States v. La Motte, 10 Cir., 67 F. 2d 788; 25 R.C.L. 1051.

Defendant is entitled to judgment and its counsel is directed to expeditiously submit proposed findings and judgment in accordance with this opinion.